```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
IN RE ADELPHIA COMMUNICATIONS       :     03 MDL 1529 (LMM)
CORPORATION SECURITIES AND          :
DERIVATIVE LITIGATION               :     MEMORANDUM AND ORDER
                                    :
------------------------------------x
                                    :
THIS PLEADING APPLIES TO            :
04 Civ. 4967                        :
                                    :
------------------------------------x
```

McKENNA, D.J.

**1.**

Third-party defendants John J., Michael J., Timothy J. and James P. Rigas ("Rigas Defendants") appeal from an order of the United States Bankruptcy Court for the Middle District of Pennsylvania dated May 26, 2004 granting a motion by plaintiffs Louis Pagnotti, Inc., Charles E. Parente, Sr., Charles E. Parente, Jr., Brian Parente, Marla Parente Sgarlat, and John Parente, trading as Brynfan Associates, a Florida general partnership ("Pagnotti Plaintiffs"), for an order pursuant to 28 U.S.C. § 1452(b) remanding this case -- which had been removed by the Rigas Defendants pursuant to id. § 1452(a) from the Court of Common Pleas, Luzerne County, Pennsylvania -- to that Court of Common Pleas.

**2.**

This action was commenced by the Pagnotti Plaintiffs in the Court of Common Pleas in January of 2003. In general terms,

they allege that they received common stock of Adelphia Communications Corporation ("Adelphia") as a result of a merger between an entity owned by them and two Adelphia affiliates, and that, in entering the merger, they relied on negligent and/or fraudulent representations on the part of Deloitte & Touche, LLP ("Deloitte"), Adelphia's auditor and accountant, and sustained damages as a result. All of their claims are brought under state law. Deloitte is the only defendant.

In June of 2002, Adelphia had filed for bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York, where its case remains pending. In June of 2003 -- some 46 actions (at that time) alleging fraud on the part of the Rigas Defendants, Deloitte and others in relation to Adelphia securities having been filed in (or removed to) federal courts -- the Judicial Panel on Multidistrict Litigation ("MDL Panel") transferred those actions to this district pursuant to 28 U.S.C. § 1407. See In re Adelphia Communications Corp. Sec. & Deriv. Litig. (No. II), 273 F.Supp. 2d 1353 (J.P.M.L. 2003). A number of tag-along actions have subsequently been transferred to this district.

To return to the present case. On December 5, 2003, Deloitte brought the Rigas Defendants into the Court of Common Pleas action as third-party defendants. On January 6, 2004, the Rigas Defendants filed a notice of removal, pursuant to 28 U.S.C.

§ 1452(a). On January 12, 2004, the Rigas Defendants filed with the MDL Panel a Notice of Potential Tag-Along Action referring to the present action. On January 16, 2004, the Pagnotti Plaintiffs filed with the United States Bankruptcy Court for the Middle District of Pennsylvania a motion for remand under 28 U.S.C. § 1452(b). On February 12, 2004, that Bankruptcy Court heard that motion. On February 26, 2004, the MDL Panel issued a conditional transfer order in the present MDL docket referring to the present action. On March 27, 2004, the Pagnotti Plaintiffs filed a motion with the MDL Panel to vacate that conditional transfer order. On May 26, 2004, the United States Bankruptcy Court for the Middle District of Pennsylvania issued its decision (apparently not published) remanding this action to the Court of Common Pleas. (Appendix of Rigas Defendants, Vol. II, A0719-A0731.) On May 27, 2004, the Pagnotti Plaintiffs advised the MDL Panel of their view that, as a result of the remand, its jurisdiction had terminated. On June 3, 2004, the Rigas Defendants filed a notice of appeal from the remand order. On June 16, 2004, the MDL Panel issued a transfer order transferring this action to this district under the present MDL docket. The transfer order was filed in this district on June 24, 2004.

**3.**

The Pagnotti Plaintiffs argue, in the first place, that this Court does not have jurisdiction to consider the Rigas

3

Defendants' appeal from the remand order of the Bankruptcy Court for the Middle District of Pennsylvania.[1] Citing the last sentence of 28 U.S.C. § 158(a), they take the position that the appeal must be heard, not by this Court (the "transferee court" in MDL Panel terms) but only by the District Court for the Middle District of Pennsylvania ("the "transferor court").[2]

The general rule as to the jurisdiction of appeals from orders entered prior to a transfer to another district is pretty clearly established. "The review of any order of the district court in a transferred cause, made before transfer, is within the jurisdiction of the court of appeals of the circuit to which the cause has been transferred." Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co., 178 F.2d 866, 870 (2d Cir. 1950) (L. Hand, C.J.) (forum non conveniens transfer). In Astarte Shipping Co. v. Allied Steel & Export Serv., 767 F.2d 86 (5th Cir. 1985), the Fifth Circuit applied the rule to conclude that the appeal from an order entered in a case pending at the time of the order in the Southern District of New York, which case was subsequently transferred by the MDL Panel to the Eastern District of Louisiana, had to be heard by the Fifth Circuit.

---

[1] Prior to the completion of briefing of the appeal, the Pagnotti Plaintiffs sought a writ of mandamus from the Second Circuit to prohibit this Court from hearing the appeal. Their petition was denied by the Court of Appeals in an order filed on January 18, 2005.

[2] 28 U.S.C. § 158(a) (last sentence) provides that: "An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." Id.

4

> First of all, a transfer under section 1407
> transfers the action lock, stock and barrel. The
> transferee district court has the power and the
> obligation to modify or rescind any orders in
> effect in the transferred case which it concludes
> are incorrect. In addition, when the [MDL Panel]
> orders a case transferred, the transferor district
> court is deprived of jurisdiction until the case is
> returned to it. Accepting appellees' argument
> would place the Second Circuit Court of Appeals in
> the position of affirming or reversing an order in
> a case under the sole jurisdiction of a district
> court in the Fifth Circuit.

Id. 767 F.2d at 87 (citing General Electric Co. v. Byrne, 611 F.2d 670, 673 (7th Cir. 1979), and Magnetic Engineering, 178 F.2d at 870).

The Pagnotti Plaintiffs cite Meat Price Investigators Ass'n v. Spencer Foods, Inc., 572 F.2d 163, 166-68 (8th Cir. 1978). There, the Eighth Circuit did decide an appeal from an order of the transferor court after the action in which the order had been made had been transferred by the MDL Panel to a transferee district court in the Fifth Circuit. The Eighth Circuit determined to hear the appeal, however, on a record, and for reasons, that render minimal the precedential value of the case here.[3] First, the Eighth Circuit proceeded "[a]ssuming that an appeal could properly be brought in either circuit," id. at 167 (footnote omitted), having "acquiesce[d]," id. at 167 n.3, in the same assumption by the parties, and then decided it would hear the appeal (from an

---

[3] The Eighth Circuit's discussion of the jurisdictional issue is contained in an order appended to its decision on the merits. See 572 F.2d at 166-68.

5

order of the transferor court disqualifying a lawyer) for two reasons:

> First, the order appealed from involves the allegedly unethical conduct of attorneys in this circuit, a matter of considerable concern to this court. Second, we are convinced that our ultimate decision in this case, whatever it may be, will not materially impede the progress of the pretrial proceedings in the transferred cases in Texas.

572 F.2d at 167. No such reasons support the suggestion that the appeal here should be heard by the District Court for the Middle District of Pennsylvania.

The Pagnotti Plaintiffs also rely on In re Joint Eastern & Southern Districts Asbestos Litig., 152 F.R.D. 15 (E.D.N.Y. & S.D.N.Y. 1993) (Weinstein, J.) There, the Second Circuit had decided an appeal from an order entered by the transferor courts even though, subsequent to the entry of that order, but prior to the Second Circuit decision, the MDL Panel had transferred the action in which the order was entered to a transferee court in another circuit. The Second Circuit's opinion does not discuss its jurisdiction vis-a-vis the other circuit. Faced with this situation, Judge Weinstein said that "[t]he Second Circuit was seized of jurisdiction over the appeal. It did not lose jurisdiction when the action was transferred to a district in another circuit by the transfer order of the MDL Panel." 152 F.R.D. at 17. Judge Weinstein considered the posture of the case that was the subject of the Second Circuit decision (that the

6

action should be dismissed for lack of subject matter jurisdiction because the claim was not a case or controversy within the meaning of Article III of the Constitution), cited Meat Price Investigators, and sent the Second Circuit's mandate to the Clerk of the transferee court. The case involves a sui generis set of facts, and, in any event, is not a Second Circuit decision.

In In re Alexander, 248 B.R. 478 (S.D.N.Y. 2000), also cited by the Pagnotti Plaintiffs, the district court denied leave to appeal and dismissed an appeal from the Bankruptcy Court for the Southern District of New York of two orders, one of which transferred venue to the District of Vermont which had previously transferred venue from that district to the Southern District of New York. In stating (as a secondary reason for not granting leave to appeal) that, "to the extent that efficiency and fairness mitigate in favor of immediate review of the question of venue, that review is more properly sought in the U.S. District Court for the District of Vermont . . .," the court observed that "it was the Vermont bankruptcy court that initially decided the question of venue, and 28 U.S.C. § 158 explicitly contemplates that review of any bankruptcy decision should be taken within the same judicial district." Id. at 483-84. There was no reason, the court thought, why the District Court for the District of Vermont "should not be permitted to decide this [venue] question in the first instance." Id. at 484. While Alexander cites, in what appears to be dictum,

the statute (28 U.S.C. § 158(a) (second sentence)) on which the Pagnotti Plaintiffs rely, Alexander does not apply here in any meaningful way.  In any event, as will appear below, the last sentence of 28 U.S.C. § 158(a) is intended to serve a purpose not implicated here at all.

Putting aside for the moment the last sentence of section 158(a), the resolution of the issue whether this Court has jurisdiction to hear the Rigas Defendants' appeal from the remand order of the Bankruptcy Court for the Middle District of Pennsylvania is straightforward.  The Rigas Defendants had the right to appeal to a district court (either of right or by permission of the district court) under 28 U.S.C. § 158(a) (first sentence) and id. § 1452(b).  In re Borelli, 132 B.R. 648, 649 (N.D. Cal. 1991).  Upon the receipt in this district on June 24, 2004 of the order of the MDL Panel transferring this action to this district, the District Court for the Middle District of Pennsylvania lost jurisdiction to hear that appeal, and this Court acquired it.  In re Baycol Products Liability Litig., 269 F.Supp. 2d 1376, 1377 (J.P.M.L. 2003) (citing Glasstech, Inc. v. AB Kyro OY, 769 F.2d 1574 (Fed. Cir. 1985)).[4]  28 U.S.C. § 158(a) (second

---

[4] The Pagnotti Plaintiffs' suggestion that the MDL Panel, upon entry of the remand order by the Bankruptcy Court for the Middle District of Pennsylvania, lost jurisdiction to transfer this action to this Court is without support.  In In re Air Crash Disaster at Charlotte, North Carolina, 393 F. Supp. 1404 (J.P.M.L. 1975), cited by the Pagnotti Plaintiffs for that proposition, the cases over which the MDL Panel did not have jurisdiction had been remanded to state courts pursuant to 28 U.S.C. § 1447(c) (not id. 1492(b)), and there was (in the nature of the

8

sentence) does not indicate a contrary result.  That sentence, rather, addresses a different problem, not present here.[5]

In response to Marathon, Congress in 1984 made substantial revisions to the then existing bankruptcy laws.  See Axona, 924 F.2d at 34.  Section 158(a) was a part of that revision.  Id.  That revision also resulted in 28 U.S.C. §§ 152(d) and 155(a).  Under the first of those provisions:  "With the approval of the Judicial Conference and of each of the judicial councils involved, a bankruptcy judge may be designated to serve in any district adjacent to or near the district for which such bankruptcy judge was appointed."  28 U.S.C. § 152(d).  Under the second of the provisions:  "A bankruptcy judge may be transferred to serve

---

case) no appeal from a bankruptcy court to a district court  pending.  See 393 F. Supp. at 1405 n.1.  Here, on the other hand, as the MDL Panel noted in its transfer order, at the time of the transfer the Rigas Defendants' appeal was pending.  The remand of the action did not divest district court jurisdiction (initially in the District Court for the Middle District of Pennsylvania, and, upon the MDL transfer, in this Court) of the appeal from the remand order.  See In the Matter of Statistical Tabulating Corp., 60 F.3d 1286, 1290 (7th Cir. 1995) ("Having lost jurisdiction over the matter on appeal, the bankruptcy court did not have the power to dismiss the portion of the case that was on appeal."), cert. denied sub. nom. LaSalle Bank Lake View v. United States, 516 U.S. 1093 (1996).

Indeed, district court review of a bankruptcy court decision to remand a case was intended by Congress as response to Northern Pipeline Constr. Co. v. Marathon Pipeline Co., 458 U.S. 50 (1982).  See Borelli, 132 B.R. 648, 650 (citing In re Axona Int'l Credit & Commerce Ltd., 924 F.2d 31, 35 (2d Cir. 1991); other citations omitted).  It seems unlikely, to say the least, that Congress intended that a transfer by the MDL Panel could eliminate Article III review of a bankruptcy judge's decision.

[5] There is very little discussion of the second sentence of section 158(a) in the case law and commentators, and the legislative history is (at best) sparse.  In the Matter of Elcona Homes Corp., 810 F.2d 136, 139 n.6 (7th Cir. 1987).  "[I]nterpretation of Congress' intent is based necessarily on the language and structure of the act."  Id. at 139.

9

temporarily as a bankruptcy judge in any judicial district other than the judicial district for which such bankruptcy judge was appointed upon the approval of the judicial council of each of the circuits involved."  28 U.S.C. § 155(a).

Commenting on the second of these provisions the Third Circuit has said:

> It is evident from the face of section 155 that its objective was the efficient and effective use of that corps of full-time bankruptcy judges. Congress was aware from past experience that the demand for bankruptcy services in any given district would ebb and flow in response to the economic conditions in the district, and that the supply of judge power in each district to provide such services would ebb and flow depending on such things as the number of district judge and bankruptcy judge vacancies.  Moreover, Congress determined not to provide the new system with part-time bankruptcy judges, and it must have been aware that there would be periods when the bankruptcy workload in a district would be substantial enough to be difficult to service, but nevertheless not yet large enough to warrant the appointment of a full-time bankruptcy judge.  In this context, the new system would be efficient and effective only if someone were given the authority to match demand with judge power by transferring bankruptcy judges to districts where the regularly assigned judicial officers were overloaded.

In re Jaritz Indus., Ltd., 151 F.3d 93, 98 (3d Cir. 1998).

Under the post 1984 bankruptcy system, then, a bankruptcy judge appointed for a specific district pursuant to 28 U.S.C. § 152(a), may find her or himself serving by designation pursuant to id. § 152(b) in an adjacent or nearby district, or transferred temporarily to another district pursuant to id. § 155(a).  In this

10

context, it is very clear that Congress added the second sentence of id. § 158(a) -- requiring that an appeal from an order of the (peripatetic) bankruptcy judge "shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving," id. -- in order to clarify what might otherwise have been a confused question as to which district court should hear the appeal from a bankruptcy judge appointed for one district, but serving, by designation or temporary transfer, in another. Section 158(a) has nothing to do with the present case.

The Court has considered all of the Pagnotti Plaintiffs' arguments for the proposition that this Court does not have appellate jurisdiction and finds them unpersuasive.

**3.**

The order from which the Rigas Defendants appeal, the May 26, 2004 order of the Bankruptcy Court for the Middle District of Pennsylvania, is a final order in a non-core matter reviewable pursuant to 28 U.S.C. § 1452(b) and id. § 158. Scherer v. Carroll, 150 B.R. 549, 551 (D. Vt. 1993). "The Bankruptcy Court's findings of fact will not be set aside unless clearly erroneous. Fed. R. Bankr. P. 8013. However, legal questions are reviewed de novo." Id. Although the decision on appeal was decided in the Third Circuit, "the Court here applies 'its interpretations of federal law, not the constructions of federal law of the transferor circuit,' to all federal issues." Adelphia Communications Corp.

Sec. and Deriv. Litig., No. 03 MDL 1529, 2003 WL 23018802, at *1 n.2 (S.D.N.Y. Dec. 23, 2003) (quoting Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993)).

**4.**

The decision of the Bankruptcy Court for the Middle District of Pennsylvania is reversed.

The Rigas Defendants have shown that the present action is "related to [a case] under title 11 [i.e., the Adelphia bankruptcy]," 28 U.S.C. § 1334(b), and was therefore properly removed pursuant to id. § 1452(a).

The indemnification provision of the Adelphia by-laws (see Rigas Defendants' Appendix, Vol. I, at AO226-AO227), which was before the Bankruptcy Court, is sufficient by itself to support that conclusion: because of the indemnification provision, the outcome of the present action "'might have [a] "conceivable effect" on the bankrupt estate [of Adelphia].'" Adelphia Communications, 2003 WL 23018802, at *2 (quoting In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992)).[6] "[J]urisdiction over a third party

---

[6] In the Bankruptcy Court's decision, it found that there was no evidence of an indemnification agreement between the Rigases and Adelphia. (Rigas Defendants' Appendix, Vol. II, at AO730.) This Court has not considered that agreement because the indemnification provision of the by-laws is a sufficient basis on which to dispose of this appeal. To the extent that the Bankruptcy Court may have meant that the relevant Adelphia by-law -- as opposed to the so-called "May 23rd agreement . . . a pre-bankruptcy agreement" (Transcript, Feb. 12, 2004, at 51) -- was not in evidence, the Bankruptcy Court was in error. The parties and the Bankruptcy Court understood that they were proceeding on the submitted papers (which include the relevant by-law). (Id. at 4.) The Pagnotti Plaintiffs did not object on evidentiary grounds to the Bankruptcy Court's consideration of the indemnification provision of the by-laws.

12

action exists where a claim for indemnification or contribution arising from that litigation has a conceivable effect on a bankruptcy proceeding." In re WorldCom, Inc. Sec. Litig., 293 B.R. 308, 320 (S.D.N.Y. 2003). That a further action (or adversary proceeding) may be required for the Rigas Defendants to realize on a claim for indemnification against Adelphia does not eliminate "related to" jurisdiction. There need only be (if so much) a reasonable basis for a claim against the estate, id. at 322, and the indemnification provision provides that. Nor are the reasons advanced by the Pagnotti Plaintiffs as to why the Rigas Defendants should probably lose any claim against Adelphia for indemnification pertinent here; indemnification claims against Adelphia are to be litigated ultimately in, presumably, the bankruptcy court,[7] but not now on a remand motion. See id.

**5.**

The Pagnotti Plaintiffs, in the alternative, seek mandatory or discretionary abstention under 28 U.S.C. § 1334(c), or remand on equitable grounds under id. § 1452(b). The Bankruptcy Court for the Middle District of Pennsylvania did not reach these

---

[7] The Bankruptcy Court thought it relevant that the Rigas Defendants had not so far filed a claim for indemnification in the Adelphia bankruptcy. (Rigas Defendants' Appendix, Vol. II, at A0729.) This Court does not regard that to be relevant. The relevant fact is that they may do so. The parties are agreed that the Rigas Defendants have extended, with the approval of the Bankruptcy Court for the Southern District of New York, the right to file proofs of claim until a date to be designated by them or by Adelphia. (Pl. Mem. at 29 n.17; Pl. Reply Mem. at 15 n.3.)

13

issues in view of its ruling that "related to" jurisdiction had not been shown.

The Court first considers mandatory abstention under 28 U.S.C. § 1334(c)(2).

In this multidistrict proceeding, this Court, on a motion by a plaintiff similarly situated to the Pagnotti Plaintiffs in that that plaintiff asserted only state law claims, concluded that "[m]andatory remand pursuant to 28 U.S.C. § 1344(c)(2) . . ., it is 'almost uniformly' held, 'does not apply to removed actions, at least where, as here, there is no parallel state court action.'" Adelphia Communications, 2003 WL 23018802, at *2 (quoting ARSTK, Inc. v. Audre Recognition Sys., Inc., No. 95 Civ. 10519, 1996 U.S. Dist. LEXIS 6020, at *12 (S.D.N.Y. May 6, 1996)).

The issue is one which the Second Circuit has not addressed and on which the holdings of other courts go both ways. See, e.g. WorldCom, 293 B.R. at 331, n.36 (not deciding issue); Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc., No. 03 Civ. 7248, 2004 WL 224505, at *6-*8 (S.D.N.Y. Feb. 5, 2004); In re Bradlees, Inc., Nos. 04 Civ. 5500 & 03 Civ. 2466, 2005 WL 106794, at *7 (S.D.N.Y. Jan 19, 2005). In Bradlees, Judge Baer concluded that, in Covanta Onondaga Ltd. P'ship v. Onondoga County Res. Recovery Agency, 318 F.3d 392, 394 (2d Cir. 2003), "the Second Circuit has impliedly indicated that mandatory abstention applies to removed cases." Id. This Court respectfully disagrees, and

concurs in the reasoning of <u>Certain Underwriters</u>, and its conclusion: "The Court thus adopts the majority rule in this district and finds that § 1334(c)(2) does not apply to removed claims." <u>Certain Underwriters</u>, 2004 WL 224505, at *8.

The Pagnotti Plaintiffs' arguments for discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) and equitable remand pursuant to <u>id.</u> § 1452(b) are substantially the same as those raised and considered in <u>Adelphia Communications</u>, and discretionary abstention and equitable remand are denied for the reasons there set forth. <u>See</u> <u>Adelphia Communications</u>, 2003 WL 23018802, at *2-*3.

### 6.

For the reasons set forth above, this Court (1) concludes that it has jurisdiction to hear the Rigas Defendants' appeal from the May 26, 2004 order of the United States Bankruptcy Court for the Middle District of Pennsylvania, (2) reverses that order, finding that there is federal "related to" jurisdiction over this action under 28 U.S.C. § 1334(b)(2), and (3) denies the Pagnotti Plaintiffs' motions seeking mandatory or discretionary abstention under <u>id.</u> § 1334(c), or equitable remand under <u>id.</u> § 1452(b).

SO ORDERED.

Dated: April 28, 2005

_____
Lawrence M. McKenna
U.S.D.J.

15