```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X
                                      :
IN RE ADELPHIA COMMUNICATIONS         :
CORPORATION SECURITIES AND DERIVATIVE :
LITIGATION                            :
- - - - - - - - - - - - - - - - - - - X
THIS MEMORANDUM AND ORDER APPLIES TO  :
03 Civ. 5752, 03 Civ. 5753,           :    03 MD 1529 (LMM)
03 Civ. 7301, 03 Civ. 5750,           :    MEMORANDUM AND ORDER
02 Civ. 3778, 03 Civ. 5789,           :
03 Civ. 7300, 03 Civ. 5751,           :
03 Civ. 5754, 03 Civ. 5772.           :
- - - - - - - - - - - - - - - - - - - X
```

McKENNA, D.J.,

Defendant financial institutions, defined in this Court's
May 27, 2005 Memorandum and Order[1] ("May 27 Order"), In re
Adelphia Communications Corp. Sec. & Deriv. Litig., No. 03 MD
1529, 2005 WL 1278544, at *2 nn.2 & 3 (S.D.N.Y. May 31, 2005),
and Deloitte & Touche LLP ("Deloitte") (collectively,
"defendants"), move to dismiss ten individual actions transferred
to this district for inclusion in the above multidistrict
litigation.  Those actions are: W.R. Huff Asset Mgmt. Co. (03-CV-
5752)("Huff");(03-CV-5753)("Huff 2"); Appaloosa Inv. Ltd. P'ship
I, et al. (03-CV-7301)("Appaloosa"); Los Angeles County Employees
Ret. Ass'n (03-CV-5750)("LACERA"); New York City Employees Ret.

---

[1] By letter endorsements dated June 8 and 9, 2005, this Court
clarified that included are: Bank of Montreal; Wachovia Bank
N.A.; Harris Nesbitt Corp.; Wachovia Capital Markets; Credit
Suisse First Boston Corporation; Credit Suisse First Boston, New
York Branch; The Royal Bank of Scotland; and Mizuho International
plc.

<u>Sys., et al.</u> (02-CV-9804)(03-CV-5789)("<u>NYCERS</u>"); <u>Division of Inv.</u> <u>of the New Jersey Dep't of the Treasury</u> (03-CV-7300)("<u>N.J.</u> <u>Div.</u>"); <u>Stocke, et al.</u> (03-CV-5772)(03-CV-5754) ("<u>Stocke</u>"); and <u>Franklin Strategic Income Fund, et al.</u> (03-CV-5751)("<u>Franklin</u>") (collectively, the "individual actions").[2]  Defendants move to dismiss the individual actions on statute of limitations grounds.[3]  For the reasons set forth below, the motion is granted in part and denied in part.  Some plaintiffs will be given leave to replead certain issues.

## Background

A recitation of the allegations at issue is unnecessary, as they are substantially similar to those contained in the

---

[2] A description of plaintiffs is as follows.  Huff is investment manager and attorney-in-fact for pension funds, ERISA plans, and other institutions and individuals on whose behalf Huff purchased Adelphia securities.  (<u>Huff</u> 2nd Am. Compl. ¶ 68) The plaintiffs in <u>Appaloosa</u> are a group of investment companies, mutual funds, and investment advisers that purchased Adelphia securities.  (<u>Appaloosa</u> Am. Compl. ¶¶ 50-57)  LACERA is a California public pension fund providing benefits to Los Angeles County employees.  (<u>LACERA</u> Am. Compl. ¶ 16)  Plaintiffs in <u>NYCERS</u> are pension funds consisting of the actuarial pension systems of New York City.  (<u>NYCERS</u> Am. Compl. ¶¶ 16, 19)  The Division of Investment has the statutory authority to make investments on behalf of the New Jersey Funds, which represent the retirement plans for state employees.  (<u>N.J. Div</u>. Am. Compl. ¶ 18) John and Evelyn D. Stocke are individual purchasers of Adelphia stock. (<u>Stocke</u> Compl. at 1) Plaintiffs in <u>Franklin</u> are affiliates of Franklin Templeton Investments, and are purchasers and holders of Adelphia securities.  (<u>Franklin</u> Am. Compl. ¶ 15)

[3] This Court refers to the standard of review stated in the May 27 Order.  <u>In re Adelphia</u>, 2005 WL 1278544, at *2-3.

Consolidated Class Action Complaint (the "CCAC"), discussed in the May 27 Order.  In re Adelphia, 2005 WL 1278544, at *1-4. Defendants move to dismiss on statute of limitations grounds, advancing arguments essentially identical to those previously raised against the CCAC.  Id. at *4.  Before addressing the merits of those arguments, this Court must first determine which limitations period applies to each of the individual actions.[4]

## Applicability of Sarbanes-Oxley

### 1. Huff

Huff was filed on June 7, 2002, prior to the enactment of Sarbanes-Oxley ("Sarbanes"), and is thus governed by the pre-existing one-year/three-year limitations framework.  In re Enter. Mortgage Acceptance Co. Sec. Litig., 391 F.3d 401 (2d Cir. 2004).

### 2. Huff 2

Huff argues that the extended limitations period applies because Huff 2 was filed after Sarbanes was enacted.  (Pl. Opp., Sec 1B at 3)  However, regardless of the filing date, Sarbanes does not revive time-barred claims.  In re Enter. Mortgage Acceptance Co., 391 F.3d at 410.  Thus, the determinative issue is whether Huff 2 was barred on July 30, 2002, when Sarbanes was passed.

Huff argues that the Huff 2 claims were timely until

---

[4] This Court refers to the May 27 Order discussion of the two limitations frameworks at issue.  Id. at *4-5.

November 2002, because they "arose from purchases . . . [ending in] November 1999."  (Pl. Opp. Fed. Binder., Sec. 1B at 3).[5] However, that argument is inconsistent with the <u>Huff 2</u> complaint, which alleges that the final purchase took place on June 2, 1999. (<u>Huff 2</u> Am. Compl. ¶¶ 3, 261)  Because the three-year limitations period for the §10(b), Rule 10b-5, §18, and §20(a) claims asserted in <u>Huff 2</u> runs from the purchase date,[6] those claims were time-barred in June 2002, before Sarbanes's enactment. Because those claims were not revived by Sarbanes, <u>Huff 2</u> is dismissed in its entirety.

### 3.  Appaloosa

There is no dispute that the Sarbanes limitations framework governs <u>Appaloosa</u>.  Nonetheless, Sarbanes does not govern all of the claims asserted because its extended limitations framework applies only to claims of "fraud, deceit, manipulation, or contrivance. . . ."  28 U.S.C. §1658(b).  Courts in this jurisdiction have uniformly concluded that §11 claims are based

---

[5] All subsequent citations to Plaintiffs' Opposition brief will assume a reference to the "Federal Binder."

[6] <u>See, e.g.</u>, <u>Grondhal v. Merritt & Harris, Inc.</u>, 964 F.2d 1290, 1294 (2d Cir. 1992) (finding so in the context of §10(b) claims)(citations omitted); <u>Menowitz v. Brown</u>, 991 F.2d 36, 39 (2d Cir. 1993)(recognizing limitations period for Rule 10b-5 claims same as §10(b) claims); <u>Dodds v. Cigna Sec., Inc.</u>, 12 F.3d 346 (2d Cir. 1993)(finding that derivative §20 claim governed by limitations periods for underlying claim).  Though there is scant caselaw regarding accrual of §18 claims, such claims are time-barred here whether they are accrued from the purchase date or the earlier date of the registration statement.

on negligence or strict liability theories, not fraud, <u>In re</u>
<u>WorldCom Sec. Litig.</u>, 294 F. Supp. 2d 431, 441-42 (S.D.N.Y.
2003); <u>ATO RAM, II, Ltd. v. SMC Multimedia Corp.</u>, No. 03 Civ.
5569, 2004 WL 744792, at *5 (S.D.N.Y. Apr. 7, 2004); <u>In re Global</u>
<u>Crossing, Ltd. Sec. Litig.</u>, 313 F. Supp. 2d 189, 196-97 (S.D.N.Y.
2003); <u>In re Merrill Lynch & Co., Inc. Research Reports Sec.</u>
<u>Litig.</u>, 272  F. Supp. 2d 256, 265 (S.D.N.Y. 2003),[7] and thus are
governed by the one-year/three-year limitations period.  In
contrast, §10(b) and Rule 10b-5 claims are governed by the
extended limitations period, because plaintiffs must prove "'*an*
*intent to deceive*, *manipulate or defraud*.'" <u>In re Worldcom Sec.</u>
<u>Litig.</u>, 294 F. Supp. 2d at 442 (emphasis included)(quoting <u>Kalnit</u>
<u>v. Eichler</u>, 264 F.3d 131, 138 (2d Cir. 2001)).

**4.   LACERA, Franklin, Stocke, and NYCERS**

The facts at issue in these four cases require this Court to
resolve an issue not previously addressed by the courts, <u>i.e.</u>,
the applicability of Sarbanes where a plaintiff has filed actions
both before and after Sarbanes' date of enactment.

**a.   LACERA**

---

[7] Some courts based that conclusion, in part, on findings
that the complaint explicitly stated that the §11 claims do not
allege fraud.  <u>In re Worldcom</u>, 294 F. Supp. 2d at 441; <u>accord</u> <u>In</u>
<u>re Global Crossing</u>, 313 F. Supp. 2d at 197 n.4.  This Court need
not decide whether such allegations are necessary, as the
<u>Appaloosa</u> complaint disclaims "any allegation that could be
construed as alleging fraud or intentional or reckless
misconduct, as [the §11] claim is solely based on . . . strict
liability and/or negligence."  (<u>Appaloosa</u> Am. Compl. ¶ 225)

LACERA argues that the extended limitations period is applicable because the second action, which is ongoing, was filed after Sarbanes.  (LACERA Opp. at 25-6)  LACERA first filed suit on June 26, 2002, but then voluntarily dismissed that suit and filed a second action on November 6, 2002, after Sarbanes' enactment.  (Id.)  Defendants argue that the second action should be considered a "de facto amendment," not a new proceeding, because it was "duplicative" of the first action.  (Global Motion Fed. Binder, Sec. 1A at 25-7)[8]

The language of Sarbanes makes clear that the extended limitations period applies only to proceedings "commenced on or after" July 30, 2002 ("new proceedings").  28 U.S.C. §1658(b).  However, the issue of what constitutes a new proceeding, where plaintiff filed actions both before and after Sarbanes's enactment, has not been previously addressed.  One relevant guidepost is the Second Circuit's directive that, in the context of Sarbanes applicability, a new proceeding is not commenced when an amended complaint is filed.  In re Enter. Mortgage Acceptance Co., 391 F.3d at 410.  Additionally, this Court is aware of the danger of allowing plaintiffs to shop for a more advantageous limitations period, and thus perform an "end-run" around the Second Circuit's ruling, merely by filing a duplicative lawsuit.

---

[8] All subsequent citations to the Global Motion will assume a reference to "Federal Binder Sec. 1A."

See, e.g., In re Enron Corp. Sec., Deriv. & ERISA Litig., No. MDL-1446, Civ.A. H-01-3624, 2004 WL 405886, at *16 n.42 (S.D. Tex. Feb. 25, 2004)(warning that "[t]o permit a plaintiff to file a new second suit . . . to circumvent a statute of limitations and expand his legal rights . . . would create legal chaos"); James v. AT&T Corp., 334 F. Supp. 2d 410, 412 (S.D.N.Y. 2004)(finding that the "[f]iling a second identical action is not the proper procedure for . . . adding additional parties. Neither is it an appropriate way to gain a more advantageous statute of limitations").

LACERA contends that the second action was filed in order to avoid a stay on Adelphia-related litigation in the Eastern District of Pennsylvania, not to manipulate the limitations periods. (LACERA Opp. at 26) While this Court accepts that explanation, reliance on a particular plaintiff's subjective intent provides an inconsistent rule of law, and insufficient protection against potential manipulation. The only consistent approach to circumstances such as these, where a first action was filed before the enactment of Sarbanes and a second duplicative action was filed after the date of enactment, is an objective one. To that end, this Court finds that when determining the applicability of Sarbanes, a duplicative action filed after Sarbanes' enactment will be considered a "de facto amendment," not a new proceeding.

LACERA argues that the second action was not duplicative because it involves "a different complaint asserting different claims." (Id.)  A suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'" N. Assur. Co. of Am. v. Square D Co., 201 F.3d 84, 89 (2d Cir. 2000)(citations omitted).  With respect to the two LACERA actions, the same plaintiff filed both suits, and the defendants named are identical.[9]  Moreover, both suits arose out of the same facts, i.e., misconduct at Adelphia that included, for example, $3.2 billion of undisclosed debt, drastic overstatement of earnings, and self-dealing transactions.  (See, e.g., 1st Compl. ¶¶ 38-44; 2nd Compl. ¶¶ 2-7)  Finally, both complaints assert, using at times identical language: §11 claims, §12(a)(2) claims, §15 claims, and common law claims for Professional Negligence and Common Law Fraud (1st Compl. Counts I-V)(2nd Compl. Counts I, IV, V, XIV, XV).

The fact that LACERA added state law claims to the second action, and omitted certain federal claims asserted in the first action, does not make the second action distinct.  See, e.g., Zoll v. Ruder Finn, Inc., No. 02 Civ. 3652, 2003 WL 22283830, at * 9 (S.D.N.Y. Oct. 2, 2003)(finding that addition of state law

_____

[9] Those defendants are: John J. Rigas; Timothy J. Rigas, James P. Rigas; Michael J. Rigas; Peter L. Venetis; Dennis P. Coyle; Leslie J. Gelber; Pete J. Metros; Erland B. Kailbourne; James R. Brown; Michael C. Mulcahey; Deloitte; Banc of America Securities LLC; and Salomon Smith Barney Holdings, Inc.

claims prevents a finding that the second action was duplicative). In fact, the differences between the two complaints were necessitated by the fact that the second action, filed in state court, could not assert §10(b), §18, and §20(a), and Rule 10b-5 claims because federal courts have exclusive jurisdiction over the Securities Exchange Act. 15 U.S.C.A. §78aa. Instead, the second complaint asserts commensurate California state law claims. (2nd Compl. Counts VI-XIII)

The only substantive difference between the two actions that this Court can identify is that the second complaint challenges an additional securities offering not mentioned in the first. (1st Compl. ¶ 250)(challenging "November 2009 Bond Offering," "2010 Bond Offering," and "2011 Bond Offering"); (2nd Compl. ¶ 321)(adding challenges to the "January 2009" and "May 2009" offerings). However, LACERA could have easily filed a first amended complaint to add a challenge to an offering pursuant to Rule 15(a). See Fed. R. Civ. P. 15(a)(permitting amendment "once as a matter of course" or by leave of court, which "shall be freely given when justice so requires").[10] Thus, the addition of

_____

[10] Plaintiffs do not argue that the stay prevented them from filing additional claims. A stay does not generally affect plaintiff's right to raise new claims. See, e.g., Ainbinder v. Kelleher, No. 92 Civ. 7315, 1997 WL 420279, at *7 (S.D.N.Y. July 25, 1997). Moreover, the stay at issue here explicitly states that it would "not prejudice the rights of the parties to this litigation," LACERA v. Rigas et al., No. 02-4086, Order (E.D.Pa. Sept. 27, 2002), which certainly would have occurred had LACERA been prevented from adding new claims.

that transaction hardly makes the second action distinct.
Because the second action was filed after the enactment of
Sarbanes and is duplicative, this Court will not consider it a
new proceeding for the purposes of Sarbanes, and <u>LACERA</u> will be
governed by the one-year/three-year limitations periods.

### b. Franklin, Stocke, and NYCERS

The same issue is presented in <u>Franklin</u>, <u>Stocke</u>, and <u>NYCERS</u>,
the only difference being that the <u>Stocke</u> and <u>NYCERS</u> plaintiffs
did not dismiss their first actions.[11]  The analysis of the <u>LACERA</u>
case applies equally to these three cases.  The plaintiffs in all
of the first actions are identical in the respective  second
actions.  The substance of the claims, the defendants named, the
facts at issue, the misconduct alleged, and relief sought do not
significantly differ.  The differences between the first and
second actions in all three cases are largely insubstantial, and
changes to parties named and/or claims asserted could have been
executed in an amendment pursuant to Rule 15(a).  Thus, this
Court finds that the second <u>Franklin</u>, <u>Stocke</u>, and <u>NYCERS</u> actions
are duplicative, and are governed by the one-year/three-year
limitations period.

---

[11] The first <u>Franklin</u> complaint was filed on June 28, 2002,
and the second on November 8, 2002.  The first <u>Stocke</u> action was
filed on April 15, 2002, and the second in October 2002 (the
exact date is illegible on the date stamp, and the parties did
not provide that date).  The first <u>NYCERS</u> action was filed on
June 14, 2002, and the second on November 12, 2002.

**5.  N.J. Div.**

There is no dispute that the extended limitations period applies to this action, which was timely filed on June 10, 2003. Less clear, however, is whether Sarbanes applies to §18 claims, an issue relevant here because defendants move to dismiss the §18 claim against Deloitte.  (Global Motion at 18)  By its terms, the extended limitations period applies to claims "of fraud, deceit, manipulation, or contrivance. . . ."  28 U.S.C. §1658(b).  The determinative issue is thus whether §18 falls into that category.

Section 18 "creates a private cause of action against persons . . . who 'make or cause to be made' materially misleading statements in reports or other documents filed with the [SEC]." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 211 n.31, rehearing denied, 425 U.S. 986 (1976)(citing 15 U.S.C. §78r). Unlike negligence or strict liability-based claims, "the [§18] defendant is accorded the defense that he acted in 'good faith and had no knowledge that such statement was false or misleading.'" Id.  Thus, the Supreme Court opined, "something more than negligence on the part of the defendant is required for recovery." Id.  Given that §18 involves more than negligence, this Court finds that the extended two-year/five-year limitations period applies.

### Arguments for Dismissal of New Claims Under the One-Year and Two-Year Limitations Period

The Court turns to defendants' limitations arguments.

Defendants argue that all claims added via amended complaints
filed on December 22, 2003 ("new claims") are barred under the
one-year limitations period.[12]  (Global Motion at 5-6)
Specifically, defendants challenge (1) new claims in <u>Huff</u>,
<u>Appaloosa</u>, <u>NYCERS</u>, and <u>Stocke</u> asserted against financial
institutions not previously named (the "new defendants"),[13] and
(2) new <u>NYCERS</u> claims challenging securities offerings not

---

[12] The legal standards relevant to the one-year limitations
period were discussed in the May 27 Order.  <u>In re Adelphia</u>, 2005
WL 1278544, at *6-7.  New <u>Appaloosa</u> claims will be evaluated
under the Sarbanes two-year limitations period.

[13] The new defendants in <u>Huff</u>, <u>Appaloosa</u>, and <u>Stocke</u> are: ABN
AMRO Bank N.V.; Bank of America, N.A.; Barclays Bank PLC; Bank of
Montreal; Bank of New York Co., Inc.; The Bank of Novia Scotia;
Citicorp U.S.A.; CIBC, Inc.; Credit Lyonnais, New York Branch;
CSFB Lyonnais; Credit Suisse First Boston, New York Branch;
Deutsche Bank AG; J.P. Morgan Chase & Co.; Societe Generale,
S.A.; SunTrust Bank; Toronto Dominion (Texas) Inc.; Wachovia
Bank, N.A.  The Royal Bank of Scotland was originally named as an
underwriter, and is newly named as a lending bank.  The new
defendants in <u>Stocke</u> also include: Citibank, N.A.; Citigroup,
Inc.; ABN AMRO Inc.; Banc of America Securities LLC; Barclays
Capital Inc.; Harris Nesbitt Corp.; BNY Capital Markets, Inc.;
CIBC World Markets Holdings, Inc.; Credit Lyonnais Securities
(USA) Inc.; Credit Suisse First Boston Corporation; Deutsche Bank
Alex.Brown Inc.; Fleet Securities, Inc.; J.P. Morgan Securities,
Inc.; Mizuho International PLC; Morgan Stanley & Co.
Incorporated; PNC Capital Markets; The Royal Bank of Scotland;
Scotia Capital (USA) Inc.; SG Cowen Securities; SunTrust
Equitable Securities; TD Securities (USA) Inc.  The new
defendants in <u>NYCERS</u> defendants are: Bank of America; The Bank of
Nova Scotia; Citibank; Citicorp U.S.A.; Credit Suisse First
Boston, New York Branch; J.P. Morgan Chase & Co.; Morgan Stanley
Senior Funding; Toronto Dominion (Texas) Inc.; and Wachovia Bank,
N.A.  (Global Motion at 6)

previously challenged (the "new transactions").[14]  (_Id._ at 5-7)

## 1.    Inquiry Notice

Defendants argue that the new claims are time-barred because they were filed more than one-year after plaintiffs were on inquiry notice of those claims.  (Global Motion at 5-6)

### a.    Claims Against the New Defendants

This Court previously found that plaintiffs joining the CCAC were on inquiry notice of claims against the financial institutions as of June 2002, based on the issuance of storm warnings and the filing of _Huff 1_, which named underwriter and lending bank defendants and articulate specific theories of liability and motive.[15]  _In re Adelphia_, 2005 WL 1278544, at *11. That finding applies equally here.

### b.    Claims Based on New Transactions

In June 2002, NYCERS asserted claims against underwriter defendants, based on their role in Adelphia securities offerings.[16]  (1st Compl., Counts I & VII)  The filing of that

_____

[14] Claims challenging new transactions are asserted against Salomon Smith Barney Inc., Banc of America Securities LLC, Credit Suisse First Boston, J.P. Morgan Securities, Inc., Morgan Stanley & Co. Incorporated, Scotia Capital (USA) Inc., and TD Securities(USA) Inc.  (_Id._)

[15] This Court found that those events constituted circumstances that would suggest to a reasonable investor of ordinary intelligence the probability that she had been defrauded.  _In re Adelphia_, 2005 WL 1278544, at *11.

[16] Those defendants are Salomon Smith Barney Inc., Banc of America Securities LLC, Credit Suisse First Boston Corporation,

suit demonstrates that, as of June 2002, NYCERS was on inquiry

notice as to claims arising out of the named underwriter

defendants' role in any Adelphia securities offering, including

the new transactions.  See, e.g., In re Worldcom, Nos. 02 Civ.

3288, 03 Civ. 0338, 2004 WL 97666, at *2 (S.D.N.Y. Jan. 20,

2004)(finding that "[t]o the extent that a defendant is listed in

the registration statement as an underwriter, an investor has

adequate notice of identity").

## 2. Tolling of the Statute of Limitations

Huff, Appaloosa, NYCERS, and Stocke each allege that they

conducted investigations into the basis for their new claims.[17]

They argue that even if inquiry notice was triggered, the

investigations tolled the limitations period since the basis for

the new claims could not have been discovered more than one-year

before the new claims were filed because: (1) the financial

institutions are secondary, rather than primary wrongdoers, and

(2) facts regarding their misconduct were not discovered until

the Official Committee of Unsecured Creditors filed a complaint.[18]

In order to toll the limitations period during an

_____

J.P. Morgan, Morgan Stanley & Co. Incorporated, Scotial Capital
(USA) Inc., and TD Securities (USA) Inc.  (Global Motion at 7)

[17] See Huff 2nd Am. Compl. at 1; Appaloosa Am. Compl. at 1;
NYCERS Am. Compl. at 1; Stocke Am. Compl. at 1.

[18] Identical arguments were fully discussed and rejected in
the May 27 Order.  In re Adelphia, 2005 WL 1278544, at *12.

investigation, plaintiffs must allege that they discovered facts during their investigation "essential to their claim[s]." <u>Levitt v. Bear Stearns & Co., Inc.</u>, 340 F.3d 94, 103 (2d Cir. 2003). Because plaintiffs do not point to <u>any</u> facts discovered during their investigations, the limitations period was not tolled.

**3. Timeliness of New Claims Under One or Two-Year Limitations Periods**

As discussed, the new §10(b) and 10b-5 claims in <u>Appaloosa</u> are governed by the extended limitations period. Because those new claims were filed on December 22, 2003, less than two-years after Appaloosa was on inquiry notice, they are timely.

However, the new §11 claims in <u>Appaloosa</u>, and all the new claims asserted in <u>Huff</u>, <u>NYCERS</u>, and <u>Stocke</u> are governed by a one-year limitations period. Because those new claims were asserted on December 22, 2003, eighteen months after plaintiffs were on inquiry notice, they are dismissed without prejudice.

**4. Leave to Replead**

<u>Huff</u>, <u>Appaloosa</u>, <u>NYCERS</u>, and <u>Stocke</u> are granted leave to replead facts sufficient to demonstrate that the limitations period was tolled during their investigations. Leave to replead is granted in the same manner and with identical limitations as was granted in the May 27 Order. <u>In re Adelphia</u>, 2005 WL 1278544, at *14.

**Arguments for Dismissal of Other Claims**

**1.  Huff**

  **a.  New Claims Barred by Three-Year Limitations Period**

_____Defendants challenge certain claims added on December 22, 2003 as barred by the three-year limitations period, including: (1) Section 11 claims arising out of November 1999 and September 2000 offerings of Adelphia securities, and (2) Section 10(b) claims based on securities purchases before December 22, 2002. (Global Motion at 13-14)  Challenges to identical claims were addressed in the May 27 Order, and for the reasons set forth therein, both sets of claims are dismissed as barred by the three-year limitations period.  Id. at *14-15.

_____**b.  Section 11 Claim Challenging the June 1999 Offering**

Defendants argue that the §11 claim against Deloitte, arising out of the "June 1999 Offering," an exchange of unregistered securities for registered securities (an "exchange offer"), is barred by the three-year limitations period.  (Global Motion at 14-15)  Defendants contend that because the offering was governed by an April 9, 1999 Registration Statement, a May 11, 1999 amendment, and a May 14, 1999 Prospectus, the §11 claim was barred when Huff filed suit on June 7, 2002.  (Id. at 14)

Huff responds that the limitations period governing §11 claims arising out of exchange offers are not measured from the date of the registration statement.  (Pl. Opp., Sec. 1B at 17) Huff contends that under the terms of the June 1999 Offering,

-16-

Adelphia did not accept tendered notes and Huff could not obtain new notes until June 15, 1999, before which Huff was free to withdraw its tender. (Id.) Huff argues, the securities were not "'bona fide offered' to the public" until June 15, 1999, at which point the limitations period began to run. (Id. at 17-18)

It is well-settled in this Circuit that the limitations period governing §11 claims challenging an offering of registered securities accrues from the effective date of the governing registration statement.[19] See, e.g., Finkel v. Stratton Corp., 962 F.2d 169, 174 (2d Cir. 1992). Even where registered securities are offered pursuant to a less typical delayed offering, the limitations period runs from the date of either the registration statement or the amendment, depending on which document governed the particular plaintiff's purchase. Id.; accord Jolly v. Pittore, No. 92 Civ. 3593, 1992 WL 196813 (S.D.N.Y. Aug. 5, 1992) (measuring limitations period by date of amendment, in context of delayed offering). The benefit of the rule is that it "provides a firm and realistic marking point" by which to measure the limitations period. Griffin v. PaineWebber Inc., 84 F. Supp. 2d 508, 512 (S.D.N.Y. 2000)(quotations omitted). Huff asks this Court to measure the limitations period

---

[19] The only exception appears to apply to offerings of unregistered securities, whereby the limitations period begins to run when trading is commenced, because there is no registration statement. See, e.g., Morse v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 619, 621-22 (D.C.N.Y. 1977).

from a date other than the effective date of the governing registration statement or amendment, yet offers no case law to support that outcome. This Court instead follows the Second Circuit in measuring the limitations period from the date of the governing document, and in so doing, finds that the §11 claim challenging the June 1999 Offering was barred when <u>Huff</u> was filed on June 7, 1999. The claim is thus dismissed because it was filed more than three-years after the effective date of all governing documents.[20]

## 2. Appaloosa

On December 22, 2003, Appaloosa added new §11 claims against lending bank defendants, arising out of the November 1999 and September 2000 Offerings. Those claims are dismissed pursuant to the three-year limitations period, for reasons discussed in the May 27 Order, <u>In re Adelphia</u>, 2005 WL 1278544, at * 14, and herein with respect to identical claims asserted in <u>Huff</u>.

New §10 claims based on purchases made before December 22, 2000 are governed by the five-year limitations period. Because those claims were filed on December 22, 2003, less than five-years after the purchases were made, they are timely to the extent they are based on purchases on or after December 22, 1998.

## 3. LACERA

---

[20] To the extent that <u>Huff</u> asserts §12 claims against underwriter defendants on the basis of the June 1999 Offering, such claims are also barred. (<u>See</u> Global Motion at 15 n.15).

Defendants challenge §11 claims asserted against: (1) Deloitte, arising out of offerings of "January 2009 Bonds," issued pursuant to an April 9, 1999 Registration Statement and a May 12, 1999 amendment; and (2) Deloitte and Salomon Smith Barney, arising out of offerings of "May 2009 Bonds," issued pursuant to a March 11, 1999 Registration Statement and an April 20, 1999 amendment.  (Global Motion at 17)(citing LACERA Am. Compl. ¶¶ 54-55)  The challenged §11 claims were filed on November 6, 2002, more than three-years after the claims accrued, and thus are dismissed as time-barred.

Defendants also challenge a §10(b) claim asserted against Deloitte.  The claim is challenged to the extent that it is based on securities purchased before November 6, 1999, three-years before the action was filed.  (Id.)(citing LACERA Am. Compl. ¶ 9) This Court agrees that such claims are barred under the three-year limitations period, and dismisses them accordingly.[21]

**4.    Franklin**

Defendants challenge a §11 claim asserted against Deloitte in November 8, 2002, arising out an offering of "May 2009 Bonds." (Global Motion at 18-19)(citing Franklin Am. Compl. ¶ 47)  That claim is identical to the one asserted in LACERA, and is

---

[21] Because LACERA asserts claims based on purchases beginning July 1, 1999, claims based on purchases made between that date and November 5, 1999 are barred.

dismissed for reasons previously discussed herein.

**5.  NYCERS**

Defendants challenge a §11 claim against Deloitte, arising out of the same June 1999 Offering challenged in <u>Huff</u>. (Global Motion at 16)  Because the claim was not filed until June 14, 2002, more than three years after the effective date of the document governing that offering, it is dismissed as time-barred under the three-year limitations period.

Defendants also challenge a §11 claim against Deloitte, arising out of a "Century Exchange Offer," issued pursuant to an August 1999 Registration Statement.  (Global Motion at 16)(citing <u>NYCERS</u> Am. Compl. ¶¶ 189-191)  Because the claim was asserted on November 12, 2002, more than three-years after the claim accrued, it is dismissed.

Finally, defendants challenge §11 claims asserted against Deloitte and underwriter defendants, arising out of the November 1999 Offering.  (Global Motion at 16)  Those claims are identical to those discussed in the May 27 Order, <u>In re Adelphia</u>, 2005 WL 1278544, at *14-15, and herein with respect to <u>Huff</u>.  <u>NYCERS</u> contends that the limitations period ran, not from a May 13, 1999 Registration Statement or a May 14, 1999 Prospectus, but from the filing of a Prospectus Supplement on November 12, 1999.  (Pl. Opp., Sec. 1C at 5)  <u>NYCERS</u> argues that because the §11 claims were asserted on November 12, 2002, they were timely filed under

-20-

the three-year limitations period.  (Id.)  However, that argument

is inconsistent with the complaint, which alleges that the

November 1999 Offering was issued pursuant to "a Prospectus

Supplement dated November 10, 1999.[22]  (NYCERS Am. Compl. ¶

192)(emphasis added)  Based on that allegation, this Court finds

that the claim was barred when filed on November 12, 2002, and is

dismissed.

**6.    N.J. Div.**

Defendants argue that the §18 claim asserted against

Deloitte is barred because it was filed more than one year after

N.J. Div. was on inquiry notice of the claim.  (Global Motion at

18)  However, as discussed, that claim is governed by the two-

year limitations period.  Thus, assuming N.J. Div. was on notice

of its claims against Deloitte in June 2002, the §18 claim was

timely when filed on June 10, 2003.

Defendants also argue that a §18 claim asserted against

Deloitte is barred by the three-year limitations period, to the

extent that it is based upon securities purchases before June 10,

2000.  (Id.)  However, the five-year extended limitations period

governs, and the claim is only barred to the extent it is based

on purchases made before June 10, 1998.

---

[22] That allegation is consistent with a schedule submitted by
NYCERS, which indicates that some purchases were made on November
10, 1999.  (Pl. Opp., Sec. 1C, Ex. A)

This Court next addresses arguments that certain otherwise untimely claims relate back under Fed. R. Civ. P. 15(c).[23]

## 1. Claims Against New Defendants

Huff and Appaloosa argue that their claims against new defendants relate back to previously asserted timely claims.[24] (Pl. Opp., Sec. 1B at 14-16, 26)  Because those claims add new parties, Rule 15(c)(3) requires that the failure to timely add the new defendants was caused by a mistake.  Fed. R. Civ. P. 15(c)(3).  Huff contends that the mistake requirement is met because "[a]lthough Huff diligently sought to uncover the New Defendants' identity and role in the fraud, the facts on which to base a claim were not publicly-available and, at least until the Creditors' Complaint was filed, could not be ascertained without discovery . . . ."  (Pl. Opp., Sec. 1B at 16)  However, the Second Circuit has made clear that where "new [defendants] were added . . . to correct a lack of knowledge, the requirements of Rule 15(c) . . . are not met."  <u>Barrow v. Wethersfield Police</u>

---

[23] This Court refers back its prior discussion of Rule 15(c).  <u>In re Adelphia</u>, 2005 WL 1278544, at *15-17.

[24] Appaloosa contends that its "First Amended Complaint relates back to the date of the filing of its original complaint which was . . . undoubtedly [filed] within the Section 13 statute of limitations."  (Pl. Opp., Sec. 1B at 26)  Because Appaloosa offers no legal argument, and has jointly filed an opposition brief with Huff, this Court assumes that Appaloosa adopts the more specific argument offered by Huff.

Dept., 66 F.3d 466, 470 (2d Cir. 1995). Because Huff's argument points to a lack of knowledge, the claims against the new defendants do not relate back.

**2.  Claims Challenging New Transactions**

NYCERS argues that several otherwise time-barred claims, filed in the November 2002 complaint, relate back to timely claims filed in the first NYCERS action in June 2002.

**a.  Century Exchange Offer**

As discussed herein, the §11 claim against Deloitte, arising out of the Century Exchange Offer, was first asserted in the November 2002 NYCERS complaint. NYCERS argues that the claim relates back to the June 2002 NYCERS complaint because it "set[s] forth the same false and misleading statements that were challenged" in the June 2002 complaint. (Pl. Opp., Sec. 1C at 3)[25] As discussed, the Century Exchange Offer was issued pursuant to a August 1999 Registration Statement. NYCERS does not argue that the June 2002 complaint mentions that registration statement. Rather, NYCERS argues that the June 2002 complaint challenges statements made in "the very same SEC filings that were incorporated by reference and were challenged by NYCERS as being false in the August 1999 Registration Statement."

_____

[25] NYCERS also argues that claims arising out of the June 1999 Offering, asserted in the June 2002 complaint (Pl Opp., Sec. 1C at 1), relate back to the June 2002 complaint. (Id. at 7 n.8) That argument is nonsensical, as plaintiffs are asking this Court to find that the claim relates back to itself.

(Id.)(citing NYCERS Am. Compl. ¶ 191)

Because NYCERS does not seek to add new defendants, Rule 15(c)(2) applies.  Fed. R. Civ. P. 15(c)(2).  Under that rule, claims relate back only where they "'arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading," and not where the second pleading is "based upon new facts and different transactions."  In re Chaus Sec. Litig., 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992)(quoting Rosenberg v. Martin, 478 F.2d 520, 526 (2d Cir.), cert. denied, 414 U.S. 872 (1973)).  The inquiry turns on whether adequate notice was provided to the opposing party by the facts alleged in the original pleading.  Id. (citations omitted).

The actual transaction challenged in any §11 claim is the preparation of a registration statement, here the August 1999 Registration Statement, which allegedly contained materially misleading statements or omissions.  15 U.S.C. § 77k.  NYCERS clearly put the preparation of the August 1999 Registration in issue in the November 2002 complaint, by asserting a §11 claim challenging the Century Exchange Offer, which was governed by that registration statement.  (NYCERS Am. Compl. ¶¶ 189-191) That transaction, however, is not at issue in the June 2002 complaint.  The June 2002 complaint does not mention the August 1999 Registration Statement.  Although that complaint challenges statements made in SEC filings which were later incorporated into

the August 1999 Registration Statement, the making of those
statements, prior to the filing of the August 1999 Registration
Statement, involve different transactions.  Moreover, even the
very incorporation of the challenged statements into the August
1999 Registration Statement constitutes a "new fact," not alleged
in the June 2002 complaint.

NYCERS alleges that Deloitte was on notice of the new §11
claim because the August 1999 Registration Statement incorporates
by reference documents filed with the SEC prior to October 1,
1999.  (Pl. Opp., Sec. 1C at 3) This Court does not agree with
that excessively expansive view of notice.

### b.  November 1999 Offering

NYCERS next argues that §11 claims, asserted against
Deloitte and certain underwriter defendants in the November 2002
complaint, arising out of the November 1999 Offering, relate back
to the June 2002 complaint because those claims challenge conduct
at issue in the June 2002 complaint.  (Pl. Opp., Sec. 1C at 7)
The new §11 claims challenge the May 13, 1999 Registration
Statement (NYCERS Am. Compl. ¶¶ 192, 358), which is also
challenged in the June 2002 complaint.  (NYCERS 1st Compl. ¶¶ 59,
203)  Because the same transaction or occurrence was at issue in
both the June 2002 and November 2002 complaints, i.e., the
preparation of the May 13, 1999 Registration Statement, the

otherwise time-barred §11 claims do relate back.[26]

### c.   June 1999 Offering

        Finally, <u>NYCERS</u> argues that claims arising out of the June
1999 Offering, which was initially asserted in the June 2002
complaint (Pl Opp., Sec. 1C at 1), relate back to the June 2002
complaint.  (<u>Id.</u> at 7 n.6)  NYCERS has not offered a timely claim
to which the claims at issue might relate back to, so Rule 15(c)
does not apply.

### Pleading Compliance with the Statute of Limitations

        As to the new claims, the individual actions failed to
adequately plead compliance with the one-year and two-year
statutes of limitations for the reasons discussed with respect to
the CCAC in the May 27 Order.[27]  <u>In re Adelphia</u>, 2005 WL 1278544,
at *19.  The individual actions' plaintiffs are granted leave to
replead facts sufficient to plead compliance, subject to the
limitations articulated in that Order.  <u>Id.</u> at 19.

        The Court turns next to the issue of plaintiffs' compliance

---

[26] A similar finding was made in the May 27 Order.  <u>In re
Adelphia</u>, 2005 WL 1278544, at *16.

[27] Defendants do not appear to argue insufficiency as to
claims against Deloitte.  Thus, this finding is limited to the
claims against new defendants and those challenging new
transactions.  For example, the pleadings are likely sufficient
as to the one or two-year limitations period governing claims
against Deloitte, as the complaints allege facts regarding how
the basis of claims against Deloitte was discovered.

with the three-year or five-year limitations periods.[28]

## 1.  Huff and Appaloosa

The <u>Huff</u> and <u>Appaloosa</u> complaints fail to plead with specificity the date of relevant securities purchases, nor have schedules setting forth purchase dates been subsequently submitted.  Although both complaints allege general periods during which purchases occurred, <u>i.e.</u>, "between June 7, 1999 and March 27, 2000" (<u>Huff</u> 2nd Am. Compl. ¶ 23) and "between April 2, 2000 and June 11, 2002" (<u>Appaloosa</u> Am. Compl. ¶¶ 116-17), such date ranges are insufficient.  <u>See, e.g.</u>, <u>In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.</u>, 815 F. Supp. 620, 641-42 (S.D.N.Y. 1993).  Because <u>Huff</u> and <u>Appaloosa</u> will replead on several other issues, they are directed to include a schedule reflecting the relevant purchase dates.[29]

---

[28] The applicable legal standard was discussed fully in the May 27 Order.  <u>In re Adelphia</u>, 2005 WL 1278544, at *19.  It should be noted, however, that the pleading requirement applies equally to §18 claims, <u>Jacobson v. Peat, Marwick, Mitchell & Co.</u>, 445 F. Supp. 518, 525-26 (D.C.N.Y. 1977) and §20 claims, to the extent that they are premised on a claim requiring a showing of the date of purchase, <u>Dodds</u>, 12 F.3d 346 (recognizing §20 derivative liability).

[29] <u>Huff</u> and <u>Appaloosa</u> correctly note that with respect to §10(b) claims, "failure to comply with the applicable statute of limitations is an affirmative defense," not an affirmative pleading requirement.  <u>In re Complete Mgmt. Inc. Sec. Litig.</u> 153 F. Supp. 2d 314, 336 n.15. (S.D.N.Y. 2001).  (Pl. Opp., Sec. 1B at 27)  However, "failure to allege compliance where a limitations defense has properly been raised may result in a Rule 12 dismissal."  <u>In re Chaus Sec. Litig.</u>, 801 F. Supp. 1257, 1270 (S.D.N.Y. 1992)(citations omitted).

## 2. NYCERS and N.J. Division

Although both the <u>NYCERS</u> and <u>N.J. Division</u> complaints do not plead dates of purchase, schedules containing that information were subsequently provided (Pl. Opp., Secs. 1C & 1D, Exs. A), and are accepted as part of the amended complaints, <u>nunc pro tunc</u>.

## 3. LACERA, Franklin, and Stocke

These three individual actions did plead facts demonstrating the relevant dates of purchase. (LACERA Am. Compl. ¶ 16); (<u>Franklin</u> Am. Compl. ¶ 15); (<u>Stocke</u> Am. Compl. ¶ 69)

### Conclusion

For the reasons discussed above, defendants' motion to dismiss is granted in part and denied in part. The <u>Huff 2</u> action is dismissed in its entirety. Plaintiffs to the other individual actions are granted leave to replead only on the specific issues identified above, in accordance with the parameters discussed in the May 27 Order, as referenced herein. Plaintiffs will replead on a date to be set in a future Memorandum and Order covering the last grounds for dismissal which will require repleading.

So Ordered.

Dated:     July _18_ , 2005
           New York, New York

                                    Lawrence M. McKenna
                                    U.S.D.J.