UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
                                          :
IN RE ADELPHIA COMMUNICATIONS             :
CORPORATION SECURITIES AND DERIVATIVE     :   03 MDL 1529 (LMM)
LITIGATION                                :
------------------------------------------:   MEMORANDUM AND ORDER
                                          :
THIS MEMORANDUM AND ORDER APPLIES TO      :
03 Civ. 5752, 03 Civ. 5753                :
                                          :
------------------------------------------:

McKENNA, D.J.,

**1.**

Defendants Deloitte & Touche LLP and the financial institutions identified in defendants' motion papers[1] move for an order pursuant to 28 U.S.C. § 1292(b) certifying an interlocutory appeal of this Court's orders[2] which, <u>inter alia</u>, denied defendants' motion for dismissal of <u>W.R. Huff Asset Mgmt. Co., L.L.C. v. Deloitte & Touche LLP</u> (No. 03 Civ. 5752) and <u>W.R. Huff Asset Mgmt. Co., L.L.C. v. Deloitte & Touche LLP</u> (No. 03 Civ. 5753), both included in the above multidistrict litigation.[3] Specifically, defendants seek certification for immediate appeal to

---

[1] <u>See</u> Notice of Mot., Nov. 15, 2005, at 1 n.1; and Reply Mem., Jan. 27, 2006, at 1 n.1.

[2] <u>In re Adelphia Comm. Corp. Sec. & Deriv. Litig.</u>, No. 03 MDL 1529, 2005 WL 2087811 (S.D.N.Y. Aug. 30, 2005) ("August 30 Order"), <u>reconsideration granted</u>, 2005 WL 2667201 (S.D.N.Y. Oct. 19, 2005) ("October 19 Order") (adhering to original determination). Familiarity with these decisions is assumed.

[3] The second of these cases was also dismissed on other grounds. <u>In re Adelphia Comm. Corp. Sec. & Deriv. Litig.</u>, No. 03 MDL 1529, 2005 WL 1679540 (S.D.N.Y. Jul. 18, 2005).

the Second Circuit of the question whether plaintiff Huff Asset Management Co., L.L.C. ("Huff") has constitutional standing.

**2.**

As described by defendants:

> Huff is "an investment manager and registered investment adviser" that purchases securities "predominately on behalf of public and private pension funds, charities, foundations and other institutions, and high net worth individuals". (Huff 1 Second Am. Compl. ¶ 126). Huff never bought a single Adelphia security for its own account and never suffered a penny of loss as a result of the decline in value of those securities; rather, it is suing solely "on behalf of its clients", who allegedly granted it complete discretion to invest on their behalf and gave it power of attorney to commence this action. (Id. ¶¶ 23, 127-32.)

(Def. Mem. at 2.) Huff responds that "investment advisers, who, like Huff, possess discretionary authority over their clients' investments as well as authority to act as attorney-in-fact on their clients' behalf, have standing to sue on behalf of their clients to recover damages under the federal securities laws." (Pl. Opp'n at 2.)

In the August 30 Order, the Court, following, principally, Weinberg v. Atlas Worldwide Holdings, Inc., 216 F.R.D. 248 (S.D.N.Y. 2003), concluded that "Huff is a 'purchaser' of the Adelphia securities at issue with statutory standing to bring the instant suit," because Huff had "complete discretion to invest on its clients' behalf, and also obtained specific authority, by means

2

of powers of attorney, to commence the instant suit." August 30 Order, 2005 WL 2087811, at *2.

The Court then considered constitutional standing. Id. at *3. The Court noted that, to obtain constitutional standing, "'[a] plaintiff must "allege[] such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial power on his behalf."'" Id. (quoting In re Nasdaq Market-Makers Antitrust Litig., 169 F.R.D. 493, 504 (S.D.N.Y. 1996) (quoting Warth v. Seldin, 422 U.S. 490, 498-99 (1975))). The Court read Indemnified Capital Invs., SA v. R.J. O'Brien & Assocs. Inc., 12 F.3d 1406 (7th Cir. 1993) -- cited by defendants, in which the Seventh Circuit concluded that the plaintiff investment advisor did not have standing -- to support Huff's position:

> Although that case dealt with a different federal securities statute, the standing question before the Seventh Circuit was sufficiently analogous to the one presented here--i.e., whether an investment advisor can satisfy constitutional standing requirements when suing to recoup the financial losses of its clients. 12 F.3d at 1409. The Seventh Circuit held that the particular investment advisor before it did not have standing, finding that "if [the investment advisor]'s customers were interested in bringing this claim against the defendants, they could very easily have assigned their rights to [the investment advisor]. Thus ... we are of the opinion that [the investment advisor] has failed to satisfy ... the constitutional requirements ... of standing." Id. at 1410. In contrast, in the instant case, Huff has alleged that it is acting as attorney-in-fact on behalf of its clients. Thus, this Court finds that the constitutional standing requirements have been

3

> satisfied, and defendants' motion to dismiss the Huff matters for lack of standing is denied.

August 30 Order, 2005 WL 2087811, at *3.

In the October 19 Order, the Court granted reconsideration, but adhered to its original determination. 2005 WL 2667201, at *1. Defendants premised their motion on Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11 (2d Cir. 1997), in which the Second Circuit held that "standing alone, a power of attorney [as opposed to a transfer of ownership] does not enable the grantee to bring suit in his own name," id., at 17-18 (citation omitted). The Court found Advanced Magnetics distinguishable because Huff, in addition to powers of attorney running to it from its clients, was also "the clients' investment advisor with unrestricted decision making power over the clients' investments, including those in Adelphia securities." 2005 WL 2667201, at *1. The Court also relied on Weinberg, finding that that decision's reasoning "applies with equal force to standing under the securities laws and standing under Article III." Id.[4]

**3.**

Certification under Section 1292(b) requires both that the order, interlocutory appeal from which is sought, "involves a controlling question of law as to which there is substantial ground for difference of opinion," and also that "the order may materially

---

[4] The Court found irrelevant that Weinberg was decided in the context of appointment of lead counsel in a class action. Id.

advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

First, regarding the issue of "controlling," the Second Circuit has explained that:

> Although the resolution of an issue need not necessarily terminate an action in order to be "controlling," it is clear that a question of law is "controlling" if reversal of the district court's order would terminate the action. For example, we have granted certification when the order involved issues of in personam and subject matter jurisdiction.

Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 24 (2d Cir. 1990) (citations omitted).

Here, if this Court's August 30 Order were reversed on the ground that Huff lacks standing, that would be an end of the case. Huff argues that, even if the August 30 Order were reversed, the case would not necessarily be dismissed because "Huff can cure the alleged standing problem by amending its complaints to add its clients as named plaintiffs." (Pl. Opp'n at 10-11 (citing Advanced Magnetics, 106 F.3d at 20).) That argument is not persuasive. If the Second Circuit found that Huff did not have standing, then the remedy on remand, if granted, would likely not be to add individual client plaintiffs to Huff, but rather to allow the assertion of claims by the individual client plaintiffs, not by Huff. There does not appear to be any logical reason why the addition of Huff's clients would give Huff itself standing. In Advanced Magnetics, the Second Circuit "remanded for the filing of an amended complaint

5

substituting the selling shareholders as the named plaintiffs on their own respective claims." 106 F.3d at 22 (emphasis added). This Court finds that the issue as to which certification is sought is a "controlling" one.

Second, this Court also finds that there is a substantial ground for a difference of opinion as to that controlling question.

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975) (citations omitted). The constitutional limitations are those "required by Art. III [of the U.S. Constitution] ex proprio vigore," while the prudential limitations are those "that the Court itself has erected and which were not compelled by the language of the Constitution." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982) (citing Flast v. Cohen, 392 U.S. 83, 97 (1968)). The constitutional and prudential limitations are distinct. "[N]either the counsels of prudence nor the policies implicit in the 'case or controversy' requirement should be mistaken for the rigorous Art. III requirements themselves. Satisfaction of the former cannot substitute for a demonstration of '"distinct and palpable injury"  . . . that is likely to be

6

redressed if the requested relief is granted.'" Valley Forge, 454 U.S. at 475 (quoting Gladstone, Realtors v. Village of Billwood, 441 U.S. 91, 100 (1979) (quoting Warth, 422 U.S. at 501)).

Defendants argue that Section 1292(b) certification should be granted as to the issue of whether Huff has constitutional, or Article III, standing.

> To satisfy the "case" or "controversy" requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must, generally speaking, demonstrate that he has suffered "injury in fact," that the injury is "fairly traceable" to the actions of the defendant, and that the injury will likely be redressed by a favorable decision.

Bennett v. Spear, 520 U.S. 154, 162 (1997) (quoting Lujan v. Defenders of Wild Life, 504 U.S. 555, 560-61 (1992)) (other citation omitted).

Neither side has cited a Second Circuit decision deciding whether a party in Huff's circumstances has constitutional standing to assert its clients' claims. Defendants are correct in pointing out (Def. Mem. at 5-6) that the language of Indemnified Capital, quoted by this Court in the August 30 Order, 2005 WL 2087811, at *3, is taken from that decision's discussion of the prudential requirements for standing, 12 F.3d at 1410, not from its preceding discussion of constitutional standing, 12 F.3d at 1408-09. See id. at 1410 ("Even if ICI has satisfied the constitutional requirements for standing, which it does not, it must also satisfy the prudential requirements.") It is not clear whether the Second

7

Circuit, if it was persuaded by Indemnified Capital's application of constitutional standing doctrine, would accept this Court's distinguishing of Advanced Magnetics in the October 19 Order. And it is not clear whether the ruling on standing in Weinberg, 216 F.R.D. at 255, is intended to refer to prudential or constitutional standing, or both.

In the circumstances, there is a substantial ground for difference of opinion on the question whether Huff has adequately pleaded the necessary injury in fact to proceed.

Finally, an immediate appeal on this issue "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Huff urges that this is not so because it is only one of many litigants in the totality of a multidistrict litigation, which includes a consolidated class action. (Pl. Opp'n at 11-12.) That argument, however, is not persuasive. In the first place, if the Second Circuit were to find that Huff lacked standing, the Huff case would disappear. It could be that its clients would be allowed to sue on their own individual claims, but those clients (or some of them) might well prefer to proceed simply as members of the class on whose behalf the consolidated class action has been brought, rather than become involved in the delay and expense that such individual actions (or a consolidated action) would entail. The elimination of a significant component of the multidistrict litigation, such as the Huff claims, plainly works

8

toward the termination of the whole. In the second place, and perhaps more importantly, it is this Court's view that, were the Second Circuit to affirm or reverse this Court's conclusion that Huff does have standing, then that elimination of uncertainty would contribute positively to the possibility of settlement, which is this Court's ultimate goal to the extent possible.[5]

The proposed appeal presents, in standing, a fundamental threshold question as to which there is a substantial ground for difference of opinion. The resolution of the question now may materially advance the ultimate termination of the case. The question, moreover, is a discrete legal issue not dependent on disputed facts that can easily be briefed promptly. This Court believes that the present motion reflects one of those exceptional situations, see Klinghoffer, 921 F.2d at 25, in which an interlocutory appeal is warranted.

Defendants' motion pursuant to 28 U.S.C. § 1292(b) for certification for immediate appeal of the Court's decisions of

---

[5] The Court has not considered herein Huff's argument that it has standing by reason of its own interest as an investment advisor to accurate information (Pl. Opp'n at 9-10; Def. Reply Mem. at 3-4 & n.2) because it was not relied on in the August 30 Order or the October 19 Order.

9

August 30, 2005 and October 19, 2005 insofar as they deny defendants' motion for dismissal of the Huff complaints for lack of standing is granted.

Dated: March 15, 2006

SO ORDERED.

                                              Lawrence M. McKenna
                                                    U.S.D.J.