UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
IN RE ADELPHIA COMMUNICATIONS       :      03 MDL 1529 (LMM)
CORPORATION SECURITIES AND          :
DERIVATIVE LITIGATION               :      MEMORANDUM AND ORDER
                                    :
------------------------------------x

McKENNA, D.J.

**1.**

Chimicles & Tikellis LLP ("C&T") a law firm which commenced two of the actions included in this multidistrict litigation -- <u>Victor v. Rigas</u> (03 Civ. 5787), and <u>Huhn v. Rigas</u> (03 Civ. 5790), on June 7 and 28, 2002, respectively, in the United States District Court for the Eastern District of Pennsylvania[1] -- seeks an award of attorneys' fees although it is not among class counsel appointed pursuant to the Private Securities Litigation Reform Act ("PSLRA"). C&T recognizes that the award it seeks must be paid out of the award made by the Court to lead counsel from the relevant segment of the fund created by settlements in the consolidated class action within the multidistrict litigation.[2]

---

[1] The Docket numbers given are those assigned in this district after transfer here by the Judicial Panel on Multidistrict Litigation.

[2] The Court's Order Awarding Attorneys' Fees and Reimbursement of Expenses in Connection with the Banks Settlement, dated November 16, 2006, provides that: "The award of attorneys' fees shall be allocated among plaintiffs' counsel in a fashion that, in the opinion of Lead Plaintiffs' Counsel, fairly compensates non-lead counsel for their respective contributions in the prosecution of the Class Action." (<u>Id.</u> ¶ 7.)

2.

On or about December 5, 2003, a number of plaintiffs in putative class actions included in the above multidistrict litigation (but not those in the actions filed by C&T) were appointed as lead plaintiffs under the PSLRA, and the law firms Abbey Gardy LLP (now Abbey Spanier Rodd Abrams & Paradis, LLP) and Kirby McInerney & Squire were appointed as lead counsel. The plaintiffs in the cases filed by C&T did not seek appointment as lead plaintiffs nor did C&T seek appointment as lead counsel.

On or about December 22, 2003, lead counsel filed a consolidated class action complaint ("CCAC"). The <u>Victor</u> action, filed by C&T, had included claims under Sections 11 and 12(a)(2) of the Securities Act of 1933 against, <u>inter alia</u>, Salomon Smith Barney, Inc. ("SSB") and Banc of America Securities LLC ("BAS").[3] The CCAC included claims under Sections 11 and 12(a)(2) against the same defendants.

There followed motion practice, some discovery, and extensive settlement discussions under the guidance of an experienced mediator, and, in June of 2006, the Court preliminarily approved a settlement in the consolidated class action between the class action plaintiffs and a number of banks, including SSB and

---

[3] The <u>Huhn</u> action filed by C&T added a claim under Section 15 of the 1933 Act against such defendants.

BAS.[4] Prior to a fairness hearing scheduled for November 10, 2006, C&T filed a Petition for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and its Objection to the Banks Settlement, and Memorandum of Law in Support Thereof, dated September 28, 2006 (Chimicles Aff., July 15, 2008, Ex. I), in which it argued its entitlement for a fee award and objected to the settlement to the extent that it provided that fee and expense awards were to be allocated at the discretion of lead counsel. On November 7, 2006, C&T submitted a Supplemental Memorandum in Support of its Petition for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and its Objection to the Banks Settlement (id. Ex. J), in which it specified its fee request at one-third of the aggregate fee award to lead counsel.

On November 10, 2006, at the fairness hearing, the Court approved the settlement with the banks. On November 16, 2006, in a written Memorandum and Order (id. Ex. L), the Court awarded to lead counsel a fee of 21.4 per cent. of the total of the settlements with the banks and Deloitte, to be taken from the settlements proportionately.[5] On December 4, 2006, the Court heard

---

[4] A separate settlement with Deloitte & Touche LLP ("Deloitte") was reached at the same time. That settlement is not involved in the present dispute.

[5] The settlement with the banks was in the amount of $244,953,437. It does not appear to be disputed that 21.4 per cent. of that amount, the fee awarded to lead counsel, was $52,420,035.52. (Id. ¶ 9.) Funds payable to counsel other than lead counsel had to come from the total award to lead counsel. (See n.1, supra.) At the November 10, 2006 hearing, the Court directed that any funds payable to C&T were to be

3

C&T and lead counsel on the issues relating to C&T's claim, and on December 15, 2006, in a written Memorandum and Order (id. Ex. N), acknowledged that it had jurisdiction to resolve fee allocation disputes but did not decide what the appropriate standard of review was.

Upon the decision of all appeals from the approval of the class action settlement (and the expiration of all times to petition for certiorari), lead counsel have advised C&T of their allocation of fees to C&T: $155,610, representing C&T's "lodestar," hours of work performed, prior to the appointment of lead counsel, at C&T's usual rates.

C&T seeks review by this Court, and contends that it should be awarded fees in the range of $14.85 to $17.14 million. (Id. ¶ 10.)

**3.**

C&T's reason for claiming entitlement to such a fee is most directly and clearly stated in its September 28, 2006 Petition:

> The Victor Action provided an independent and substantial benefit for the Class that no other plaintiff, including the Lead Plaintiffs provided: The Victor Action initiated and preserved all Section 11 claims that ultimately were asserted against SSB and BAS in the [CCAC] filed in this Action on December 22, 2003. . . . The CCAC includes the Victor Action plaintiffs as named plaintiffs and class representatives, and it

---

allocated in the first instance by lead counsel.

> includes as defendants 38 financial institutions comprised of 18 financial institutions, including lead underwriters SSB and BAS, in their capacity as Adelphia's underwriters ("Underwriters") and 20 financial institutions in their capacity as Adelphia's lending banks ("Lending Banks").
>
> In March 2004, the Underwriters and Lending Banks moved to dismiss the CCAC asserting that the claims against them were time-barred. This Court granted, in its May 31, 2005 opinion the Underwriters' and Lending Banks' motions to dismiss the CCAC on statute of limitations grounds, holding that such claims were untimely under the one-year and three-year statute of limitations periods, <u>except</u> for the claims against SSB and BAS which were contained in the <u>Victor</u> Action or related back to claims asserted in the <u>Victor</u> Action.

(Petition (Chimicles Aff., July 15, 2008, Ex. I) at 3 (footnote omitted) (citing <u>In re Adelphia Communications Corp. Sec. & Deriv. Litig.</u>, No. 03 MDL 1529, 2005 WL 1278544 (S.D.N.Y. May 31, 2005)).

**4.**

Lead plaintiffs, of course, are one of the key innovations at the heart of the PSLRA. "The PSLRA does not prescribe all the roles that the lead plaintiff can fulfill, but it does include selection of class counsel among the lead plaintiff's roles." James D. Cox & Randall S. Thomas, "Does the Plaintiff Matter? An Empirical Analysis of Lead Plaintiffs in Securities Class Actions," 106 Colum. L. Rev. 1587, 1595-96 (2006) (footnote omitted). The Third Circuit has persuasively said that the PSLRA "evidences a strong presumption in favor of approving a properly - selected lead plaintiff's decisions as to counsel selection and counsel retention." <u>In re Cendant Corp. Litig.</u>, 264 F.3d 201, 276

5

(3d Cir. 2001) ("Cendant I"). In the present case, the Court awarded fees to lead counsel chosen by lead plaintiffs in light of the factors identified in Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000), and Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005). See the Court's Memorandum and Order of November 16, 2006 (Chimicles Aff., July 15, 2008, Ex. L). The parties have not, however, cited case law from the Second Circuit identifying factors to be followed specifically in awarding fees to counsel other than lead counsel in PSLRA cases.[6]

A later decision than that cited above in the Cendant Corporation litigation, In re Cendant Corp. Sec. Litig., 404 F.3d 173 (3d Cir. 2005) ("Cendant II"), "examine[s] the effect of the PSLRA on non-class counsel." Id. at 180. It has much to offer that is pertinent here. In the first place, it distinguishes the situations in which non-class counsel seek fees for work prior to the appointment of class plaintiff(s), and those in which they do so for work performed after the appointment of class plaintiff(s). Id. at 193-197, cf. id. at 197-202. Here, C&T seeks fees for work performed exclusively prior to the appointment of lead plaintiffs.

---

[6] C&T cites In re High Sulfur Content Gasoline Prods. Liability Litig., 517 F.3d 220 (5th Cir. 2008), and In re Diet Drugs Prods. Liability Litig., 401 F.3d 143, 173 (3d Cir. 2005) (C&T Mem. at 11-12), but neither is a PSLRA case. To the extent such cases stand for the proposition that fee awards suggested by lead counsel should be closely scrutinized by courts, this Court does not disagree.

6

Speaking of work performed prior to the appointment of lead plaintiffs, the Cendant II court said that:

> If an attorney creates a substantial benefit for the class in this period--by, for example, discovering wrongdoing through his or her own investigation, or by developing legal theories that are ultimately used by lead counsel in prosecuting the class action--then he or she will be entitled to compensation whether or not chosen as lead counsel.

404 F.3d at 195. In such a case, the court added, "the court, not the lead plaintiff, must decide for itself what firms deserve compensation," although the court may "give substantial deference to the lead plaintiff's decision about what work conferred such benefits." Id. While the filing of a complaint, without more, is not fee-worthy, id. at 196, "attorneys who alone discover grounds for a suit, based on their own investigation rather than on public reports, legitimately create a benefit for the class" and "should generally be compensated out of the class's recovery," and "attorneys whose complaints contain factual research or legal theories that lead counsel did not discover, and upon which lead counsel later rely, will have a claim on a share of the class's recovery." Id. at 196-97.

Here, lead counsel has agreed that C&T should have some compensation. That is not at issue. The issue is whether the amount allocated by lead counsel -- $155,610, representing all time invested in the Victor and Huhn cases by C&T up until the appointment of lead plaintiffs and counsel, at C&T's regular hourly

7

rates -- is appropriate compensation to be left undisturbed by the Court, or should be increased.

In considering the issue, it is, in the first place, essential, in the Court's view, to keep in mind that this is a PSLRA case. In such a case, it is generally true (and there is no suggestion that it is not true here) that counsel filing complaints addressing some perceived or suspected securities fraud do not know whether they will or will not, at the end of the day, become lead, or co-lead, counsel, but do know that there will be lead counsel within months of the first filed purported class action complaint, and also know that, when that happens, the work product embodied in their complaints may be appropriated at will by lead counsel; they would know that even if their plaintiff had standing to assert a meaningful claim, and was the only plaintiff that had it, even that plaintiff and that claim could be incorporated by lead counsel in a consolidated complaint without a by-your-leave. See Hevesi v. Citigroup, Inc., 366 F.3d 70, 82-83 & n.13 (2d Cir. 2004).

Next, it is important to keep in mind that the "lodestar," while not dispositive, is not irrelevant. See Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518, 526 (1st Cir. 1991). The Second Circuit has said that "the lodestar remains useful as a baseline even if the percentage method is eventually chosen. Indeed, we encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of

the requested percentage." Goldberger, 209 F.3d at 50 (quoting In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig., 55 F.3d 768, 820 (2d Cir. 1995)). See also the Court's Memorandum and Order of November 16, 2006, at 2.

**5.**

Here, there is no doubt that the inclusion of claims under Section 11 and 12(a)(2) of the 1933 Act in the CCAC were of benefit to the class. There has been no showing by C&T, however, that the use of those statutes, or their use against SSB and BAS, represents ground-breaking legal or factual analysis. Even if the Victor and Huhn complaints had never been filed, and Lead Counsel had not thought of the use of the statutes themselves, Lead Counsel would in all likelihood have noticed their use in the Huff complaint filed in the Western District of New York on June 7, 2002, the same day on which Victor was filed.[7] (See Lead Counsel Mem. at 4.) C&T's contribution was not in any way so unique that it can be fairly said that there would have been no settlement of the magnitude achieved without it.

Further, a fee representing such a large multiple of the relevant lodestar -- Lead Counsel, without demur, have calculated it as 110 (id. at 1) -- is simply not reasonable.

---

[7] W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP, et al. (03 Civ. 5752 [S.D.N.Y. Docket No.].) It would, in this context, have made no difference that Huff was not a purported class action.

A grant of C&T's fee request would, as well, operate against the policies underlying the PSLRA. Upon the breaking of news of perceived fraud involving potentially large damages, the old "race-to-the-courthouse system," Cendant II, 404 F.3d at 192 (citing Cendant I, 264 F.3d at 276), would likely gain new life if counsel thought that being first with some claim or other could, possibly, result in a fee of lodestar times a large multiple even though counsel were not the choice of lead plaintiffs.

In sum, in the Court's view, a fee of lodestar times multiple for work prior to selection of lead plaintiffs must be supported by considerably more compelling circumstances than those shown here. Accepting the responsibility to review, and scrutinize carefully, the recommendation of lead counsel, the Court concludes that the allocation of $155,610 to C&T is fair and consistent with the Goldberger factors, and C&T's request for a greater fee is denied.

SO ORDERED.

Dated: September 3, 2008

                                        Lawrence M. McKenna
                                        U.S.D.J.