```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
IN RE ADELPHIA COMMUNICATIONS       :    03 MDL 1529 (LMM)
CORPORATION SECURITIES AND          :
DERIVATIVE LITIGATION               :    MEMORANDUM AND ORDER
                                    :
------------------------------------x
                                    :
THIS DOCUMENT RELATES TO            :
04 Civ. 5759                        :
                                    :
------------------------------------x
```

McKENNA, D.J.,

**1.**

This putative class action -- <u>Argent Classic Convertible Arbitrage Fund L.P., et al. v. Scientific-Atlanta, Inc., Motorola, Inc., Julian Eidson & Wallace Haislip</u> (04 Civ. 5759) -- is brought by lead plaintiffs appointed to pursue the claims alleged in the Consolidated Class Action Complaint (now settled), represented by the co-lead counsel appointed for that case and others.

The corporate defendants, Scientific-Atlanta, Inc. ("Scientific-Atlanta") and Motorola, Inc. ("Motorola"), supplied Adelphia Communications Corporation ("Adelphia"), which was engaged in the provision of cable television, with digital converters (set-top cable boxes). (Comp. ¶ 5.)

> Beginning in or about December 2000, Adelphia negotiated and entered into supplemental agreements with Motorola and Scientific-Atlanta to buy cable boxes at the original contract price plus a premium. At the same time, Adelphia entered into other agreements with Motorola and Scientific-Atlanta whereby Motorola and Scientific-Atlanta

>      agreed to pay to Adelphia an amount equivalent to
>      the premium as "marketing support payments."

(Id.)  "These deals were in essence "wash" transactions.  Their only impact was to make Adelphia's financial performance look better from an accounting standpoint, by artificially inflating Adelphia's [earnings before interest, taxes, depreciation and amortization ["EBITDA"]] throughout the Class Period."  (Id. ¶ 6.)[1]

Plaintiffs allege the violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240, by all defendants (Count I), and the controlling person liability, under Section 20(a) of the 1934 Act, 15 U.S.C. § 78t, of defendants Eidson, during the class period vice-president and controller of Scientific-Atlanta (Comp. ¶ 20), and Haislip, during the class period chief financial officer, treasurer and vice-president of finance of Scientific-America. (Id. ¶ 19.)

**2.**

Defendants move for dismissal of the complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act ("PSLRA").  Defendants contend both that the

---

[1] The class period is October 1, 2000 through June 10, 2002.  (Comp. ¶ 1.)
   The Court assumes familiarity with all other decisions in this multi-district litigation.
   A brief summary of the events leading to Adelphia's bankruptcy and much litigation may be found in In re Adelphia Communications Corp. Sec. & Deriv. Litig., No. 03 MD 1529, 2005 WL 1278544, at *1 (S.D.N.Y. May 31, 2005.)

2

complaint's claims are barred by limitations and that its allegations are inadequate in several respects: that the complaint (i) attempts to allege a claim for aiding and abetting securities fraud that is precluded by Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994), and (ii) does not meet the pleading standards for the claims asserted under Fed. R. Civ. P. 12(b)(6) and 9(b) and the PSLRA.

Subsequent to the filing of the motions, the parties have called the Court's attention to Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 128 S. Ct. 761 (2008), and briefed that case's application here.

Since Stoneridge is dispositive, the Court does not reach defendants' other arguments.

**3.**

On a motion under Fed. R. Civ. P. 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, and the court may

> consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit. To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."

ATSI Communications, Inc. v. The Skaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atlantic Corp v. Twombly, 127 S. Ct. 1955, 1965 (2007) (footnote omitted)) (other citation omitted). "Allegations that are conclusory or unsupported by factual assertions are insufficient." Id. (citation omitted).

The present complaint, alleging the violation of Section 10(b) of the 1934 Act and Rule 10b-5, must also satisfy the requirements of Fed. R. Civ. P. 9(b) and the PSLRA that fraud be pleaded with particularity, as well as the PSLRA requirements as to pleading scienter. 15 U.S.C. § 78u-4(b)(2).

> In a typical § 10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.

Stoneridge, 128 S. Ct. at 768 (citing Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341-342 (2005)).

**4.**

In Stoneridge, the Supreme Court considered a case in which investors who had suffered loses after purchasing common stock of a cable television operator ("Charter"), sought to impose liability under Section 10(b) of the 1934 Act and Rule 10b-5 on "entities" -- Scientific-Atlanta and Motorola, the corporate defendants here -- "who, acting both as customers and suppliers, agreed to arrangements that allowed [Charter] to mislead its

4

auditor and issue a misleading financial statement affecting the stock price." 128 S. Ct. at 766. The Supreme Court concluded that "the implied right of action [under Section 10(b) and Rule 10b-5] does not reach the customer/supplier companies because the investors did not rely upon their statements or representations." Id.

Scientific-Atlanta and Motorola supplied Charter with digital converters (set top boxes), and Charter "arranged to overpay [Scientific-Atlanta and Motorola] $20 for each set top box it purchased until the end of the year, with the understanding that [they] would return the overpayment by purchasing advertising from Charter." Id. Scientific-Atlanta and Motorola participated in the creation of false documentation "[s]o that [Charter's auditor] would not discover the link between Charter's increased payments for the boxes and the advertising purchases." Id. at 767. "Charter recorded the advertising payments to inflate revenue and operating cash by approximately $17 million," and "[t]he inflated number was shown on financial statements filed with the Securities and Exchange Commission." Id.

The complaint alleged that Scientific-Atlanta and Motorola "knew or were in reckless disregard of Charter's intention to use the transactions to inflate its revenues and knew the resulting financial statements issued by Charter would be relied on by research analysts and investors." Id.

5

Plaintiffs have not shown that there is any material difference between the scheme in which Scientific-Atlanta and Motorola were alleged to have participated in Stoneridge, and that in which they are alleged to have participated here.

The Supreme Court in Stoneridge began by recognizing that, in Central Bank, it had determined that the implied right of action under Section 10(b) and Rule 10b-5 did not include a right of action against aiders and abettors. Id. at 768-769. This means, among other things, that "the conduct of a secondary actor must satisfy each of the elements or preconditions for [Section 10(b) and Rule 10b-5] liability." Id. at 769. One of those essential elements is "[r]eliance by the plaintiff upon the defendant's deceptive acts." Id.

The Court found that there was no applicable presumption of reliance because Scientific-Atlanta and Motorola

> had no duty to disclose; and their deceptive acts were not communicated to the public. No member of the investing public had knowledge, either actual or presumed, of respondents' deceptive acts during the relevant times. Petitioner, as a result, cannot show reliance upon any of respondents' actions except in an indirect chain that we find too remote for liability.

The Court rejected an argument that liability could be imposed "absent a public statement." Id. at 770.

> In effect petitioner contends that in an efficient market investors rely not only upon the public statements relating to a security but also upon the transactions those statements reflect. Were this concept of reliance to be adopted, the implied

6

> cause of action would reach the whole marketplace in which the issuing company does business; and there is no authority for this rule.

Id.

The Court also noted that "reliance is tied to causation, leading to the inquiry whether [Scientific-Atlanta's and Motorola's] acts were immediate or remote to the injury." Id. The Court concluded that Scientific-Atlanta's and Motorola's

> deceptive acts, which were not disclosed to the investing public, are too remote to satisfy the requirement of reliance. It was Charter, not respondents, that misled its auditor and filed fraudulent financial statements; nothing respondents did made it necessary or inevitable for Charter to record the transactions as it did.

Id.

The Court also spoke of the danger of expanding the implied right of action under Section 10(b) and Rule 10b-5.

> Were the implied cause of action to be extended to the practices described here, however, there would be a risk that the federal power would be used to invite litigation beyond the immediate sphere of securities litigation and in areas already governed by functioning and effective state-law guarantees. Our precedents counsel against this extension.

Id. at 770-771 (citations omitted). Section 10(b) "does not reach all commercial transactions that are fraudulent and affect the price of a security in some attenuated way." Id. at 771.

After review of other policy considerations, the Supreme Court summarized the case and its holding:

> Here respondents were acting in concert with Charter in the ordinary course of suppliers and, as

> matters then evolved in the not so ordinary course, as customers. Unconventional as the arrangement was, it took place in the marketplace for goods and services, not in the investment sphere. Charter was free to do as it chose in preparing its books, conferring with its auditor, and preparing and then issuing its financial statements. In these circumstances the investors cannot be said to have relied upon any of respondents' deceptive acts in the decision to purchase or sell securities; and as the requisite reliance cannot be shown, respondents have no liability to petitioner under the implied right of action. This conclusion is consistent with the narrow dimensions we must give to a right of action Congress did not authorize when it first enacted the statute and did not expand when it revisited the law.

Id. at 774.

In response to the arguments of Scientific-Atlanta and Motorola that Stoneridge requires dismissal of the complaint, plaintiffs adopt the arguments of W.R. Huff Asset Management Co., LLC ("Huff"), a plaintiff in a related case in which Scientific-Atlanta and Motorola sought dismissal under Stoneridge.[2]

> Huff's argument may be summarized in its own words:
>
> During the year 2000 in particular, Adelphia's multi-hundred million dollar purchases of digital cable set-top boxes and other equipment from [Scientific-Atlanta] and Motorola received widespread coverage in the news media. Purchasers of Adelphia securities relied on the apparent legitimacy of these announced deals between

---

[2] See Lead Plaintiffs' Notice of Joinder in Positions Set Forth in the Response of Plaintiff W.R. Huff Asset Management Co., LLC (04 Civ. 5759 Doc. No. 25), referring to Memorandum of Law of Plaintiff W.R. Huff Asset Management Co., L.L.C. in Response to the Notice of Recent Authority and Supplemental Memorandum Submitted in Further Support of the Motions by Motorola, Inc. and Scientific-Atlanta, Inc. to Dismiss the Section 10(b) and Rule 10b-5 Claim Asserted Against Them in Huff I (03 Civ. 5752 Docket No. 62) ("Huff Mem").

> Adelphia and the Box Manufacturer Defendants when analyzing Adelphia's financial statements and other publicly-available information.  Yet, it was these very purchases that Adelphia and [Scientific-Atlanta and Motorola] used to artificially inflate Adelphia [EBITDA].

(Huff Mem. at 1-2.)  Huff cites articles dated February 1, May 31, June 5 and June 6, 2000 from various newspapers, reporting large purchases of set top boxes by Adelphia from Scientific-Atlanta or Motorola (id. at 4-5), adding that "neither [Scientific-Atlanta], Motorola nor Adelphia ever informed the public that an essential component of these transactions was the round trip marketing support payment that Adelphia used to inflate its EBITDA." (Id. at 5.)

The Huff argument is not persuasive.

The cited news reports say no more than that Adelphia purchased large quantities of set top boxes from Scientific-Atlanta and Motorola.  They make no representations about Adelphia's EBITDA.

Here, as in Stoneridge, it was the issuer, Adelphia, that "filed fraudulent financial statements; nothing [Scientific-Atlanta or Motorola] did made it necessary or inevitable for [Adelphia] to record the transactions as it did." Stoneridge, 128 S. Ct. at 770.

Moreover, even if the news reports relied upon could be considered to be statements by Scientific-Atlanta or Motorola, or by Adelphia, they are not "statements relating to a security" but statements describing transactions that statements relating to a

security would reflect. But the Supreme Court has rejected this line of argument. Id. <u>Stoneridge</u> requires dismissal of the complaint.

If plaintiffs were to replead (as Huff requested in its cited brief) to include the facts reported in the news accounts relied upon and also that the public relied on those accounts, the pleading would still be futile under <u>Stoneridge</u>. Leave to replead is, accordingly, denied. See <u>Jones v. New York State Div. of Military and Naval Affairs</u>, 166 F.3d 45, 55 (2d Cir. 1999).

\*     \*     \*

Complaint dismissed without leave to replead.

SO ORDERED.

Dated: June *16*, 2009

_____
Lawrence M. McKenna
U.S.D.J.