```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
                                          :
IN RE ADELPHIA COMMUNICATIONS             :
CORPORATION SECURITIES AND DERIVATIVE     :    03 MDL 1529 (LMM)
LITIGATION                                :
                                          :    MEMORANDUM AND ORDER
------------------------------------------:
                                          :
This Document Relates to 05 Civ. 9050     :
                                          :
------------------------------------------x
```

McKENNA, D.J.,

**1.**

The Bank Defendants object to a February 11, 2009 order of Magistrate Judge Ellis to the extent that that order denied their motion for an order compelling the production of what are called the "Covington Log Documents." (See Objections at 1-2.)[1]

A Special Committee of directors of Adelphia Communications Corporation ("Adelphia") retained the law firm Covington & Burling ("Covington") in March of 2002, initially in connection with questions regarding the relationship of Adelphia with Adelphia Business Solutions, Inc., but shortly thereafter in relation to the revelation that Adelphia was jointly and severally liable for more than $2 billion of borrowings by entities controlled by members of the Rigas Family, which liability had not

---

[1] See Judge Ellis' Opinion & Order dated February 11, 2009, at 2-3. The question was argued before Judge Ellis on February 26, 2009. (Transcript, Feb. 26, 2009, at 60-62.)
   The "Bank Defendants" are identified in the Smith Declaration of February 26, 2009, at 1 n.1.
    The Court assumes familiarity with all other decisions in this multidistrict litigation.

been disclosed in Adelphia's publicly filed financial statements. An informal, and then a formal, investigation by the Securities and Exchange Commission ("SEC"), grand jury subpoenas, an SEC civil enforcement proceeding, and an Adelphia civil action against its auditor followed, with all of which Covington was concerned, assisting the Special Committee's investigation and advising it. (See generally, Baird Decl., July 23, 2008.)

Covington prepared three reports with numerous exhibits including summaries of witness interviews. The reports are (i) the First Report to the Special Committee, May 24, 2002, (ii) the Draft Summary of Investigation, December, 2002, and (iii) the Draft Summary of Investigation, March 2003. Both plaintiff Adelphia Recovery Trust ("ART") and the Bank Defendants have the Covington Report and supporting documentation, including witness interview summaries. Neither has the Covington Log Documents.

The Covington Log Documents, as described by Covington, contain

> Covington's notes, e-mails, memoranda, internal communications, legal research and analysis, and work product all reflecting confidential legal advice as well as the thoughts, mental impressions, and opinions of Covington attorneys engaged in the representation of Adelphia and the Special Committee.

(Baird Decl. ¶ 24.) The Covington logs are said to include more than 23,000 entries (Objections, at 1), over a period from March 29, 2002 through January 10, 2005. (Id. at 1-2, n.1.)

2

Judge Ellis denied the Bank Defendants' motion for production of the Covington Log Documents as protected work product "because they were created in contemplation of litigation." (Ellis Opinion & Order, February 11, 2009, at 2-3.

The Bank Defendants argue, first, that the Covington Log Documents are not entitled to work product protection because the Special Committee investigation was not in "anticipation of litigation,"[2] second, that any such protection was waived by the production of the Covington Reports and underlying materials "and such selective disclosure cannot withstand a waiver analysis," and, third, that no client has asserted a privilege or work product objection and that Covington cannot do so on a client's behalf. (Objections, at 3.)  The Bank Defendants also urge that they have a substantial need for the Covington Log Documents and cannot obtain the information by other means, so that the documents should be produced pursuant to Fed. R. Civ. P. 26(b)(3).

The Court is not persuaded by any of the Bank Defendants' arguments.

**2.**

The Bank Defendants argue first that the documents were not created "in anticipation of litigation," but rather for a business purpose, as evidenced in a May 23, 2002 press release

---

[2] The phrase "in anticipation of litigation" comes from Fed. R. Civ. P. 26(b)(3).

3

(Smith Decl., Feb. 26, 2009, Ex. K) and Covington's May 24, 2002 Initial Report.  (See Objections at 7-9 (citing Allied Irish Banks p.l.c. v. Bank of America, N.A., 240 F.R.D. 96, 107-09 (S.D.N.Y. 2007))).  The Second Circuit has said that the appropriate formulation is whether a document was prepared because of -- not to primarily assist in -- litigation.  United States v. Adlman, 134 F.3d 1194, 1198-1203 (2d Cir. 1998).  "The fact that a document's purpose is business-related appears irrelevant to the question whether it should be protected under Rule 26(b)(3)."  Id. at 1200 (footnote omitted).

  Here -- very much as in Woolworth Corp. Sec. Class Action Litig., No. 94 Civ. 2217, 1996 WL 306576, at *3 (S.D.N.Y. June 7, 1996) (quoted with approval in Adlman, 134 F.3d at 1201) -- "the reality of impending litigation [was] clear."  (Id.)

  Even the Adelphia press release that the Bank Defendants quote in support of their argument that Covington was retained by the Special Committee for a business purpose (see Objections, at 8 (quoting Smith Decl., Feb. 26, 2009, Ex K at 1-2)) notes, among material risks and uncertainties, "pending derivative and class action lawsuits."  (Id. at 4.)

  Judge Ellis properly concluded, based on the entire record, that the documents at issue were protected under Rule 26(b)(3).

4

**3.**

The Bank Defendants also argue that any work product privilege was waived.  The record does not support this argument.

Two documents identified in the Covington Logs were marked during a deposition in a now settled litigation (see Smith Decl., ¶¶ 12 & 13); the documents appear, at most, to be marginally relevant, and there is no reason not to accept the argument (Pl. Mem. at 12) that disclosure of these two documents was as inadvertent as it was de minimis.  There is no evidence that it was a selective waiver.

The production of the Covington Reports and associated produced documents, such as witness interview summaries, does not of itself effect a waiver of work product production for the Covington Log Documents, nor does protection of the latter mean a "selective disclosure," as the Bank Defendants suggest. (Objections, at 3.)  The disclosed materials were prepared for disclosure; the Covington Log Documents are the result of communications during preparation of the former.  Those are distinct categories, and the Bank Defendants have shown no authority that production of the one requires production of the other.[3]

---

[3] An analogy might be the submission of a brief to a court.  Such a submission hardly entitles the other side to discovery of the lawyer-author's communications with fellow lawyers or clients concerning the preparation of the brief.

5

> Nor does the "at issue" waiver doctrine apply here.
>
> [R]ules which result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust, should be formulated with caution. Generally, "[c]ourts have found waiver by implication when a client testifies concerning portions of the attorney-client communication, ... when a client places the attorney-client relationship directly at issue, ... and when a client asserts reliance on an attorney's advice as an element of a claim or defense...." The key to a finding of implied waiver in the third instance is some showing by the party arguing for a waiver that the opposing party <u>relies</u> on the privileged communication as a claim or defense or as an element of a claim or defense.

In re County of Erie, 546 F.3d 222, 228 (2d Cir. 2008) (quoting Sedco Int'l S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982)). The Bank Defendants have not shown that ART will rely on the Covington Log Documents. The fact that ART may have listed the Covington Reports in a response to interrogatories as supporting evidence for its responses (Def. Reply Mem. at 8) is not sufficient to bring the Covington Log Documents within Erie.

**4.**

The record does not support the argument that no proper assertion of work product protection for the Covington Log Documents has been made.

The Covington Logs appear to have been created as the result of a 2004 order of the Pennsylvania Court of Common Pleas, Philadelphia County, in Adelphia Communications Corp. v. Deloitte & Touche LLP, issued in response to a motion for a protective order

on the part of Adelphia. (See Smith Decl, Feb. 26, 2009, Ex. T; Pl. Mem. at 5.) There is no evidence that Adelphia (or any of its successors in interest, including the present plaintiff) has communicated any change of position in this regard. In any event, Covington has asserted the right to work product protection throughout. (Baird Decl., ¶¶ 2, 20, 24, 27, 28.) "Work product immunity may be asserted by either the client or the attorney." In re Grand Jury Subpoenas, No. M 11-189, 2002 WL 31040322, at *3 (S.D.N.Y. 2002) aff'd on other grounds, 318 F.3d 379 (2d Cir. 2003).

**5.**

Finally, the Bank Defendants have not made an adequate showing that they should have the Covington Log Documents under Fed. R. Civ. P. 26(b)(3)(A)(ii). Their adversary does not have them. The Bank Defendants and their adversary both have the Covington Reports and witness summaries, and, more importantly, both also have the opportunity to depose any significant fact witness.

*    *    *

The objecting defendants have not shown that Judge Ellis' decision is clearly erroneous or contrary to law, see 28 U.S.C. § 636(b)(1)(A), and it is affirmed, and the objection overruled.

SO ORDERED.

Dated: July **/**, 2009

_____
Lawrence M. McKenna
U.S.D.J.

7