```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
IN RE ADELPHIA COMMUNICATIONS       :    03 MDL 1529 (LMM)
CORPORATION SECURITIES AND          :
DERIVATIVE LITIGATION               :    MEMORANDUM AND ORDER
                                    :
------------------------------------x
                                    :
THIS DOCUMENT RELATES TO            :
05 Civ. 4055                        :
                                    :
------------------------------------x
```

McKENNA, D.J.,

**1.**

This action -- <u>AIG DKR SoundShore Holdings, Ltd., et al. v. Scientific-Atlanta, Inc., Motorola, Inc., Wallace Haislip and Julian Eidson</u> (05 Civ. 4055) -- was filed in the Superior Court of Fulton County, Georgia, removed to the United States District Court for the Northern District of Georgia, and transferred to this district for inclusion in the above-identified multidistrict litigation.[1]

Adelphia Communications Corporation ("Adelphia") was a provider of cable television. The corporate defendants, Scientific-Atlanta, Inc. ("SA") and Motorola, Inc. ("Motorola") manufactured cable converters (set top boxes) necessary for cable

---

[1] Plaintiff's motion for remand and abstention was denied in 2005. <u>In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.</u>, No. 03 MDL 1529, 2005 WL 1404798 (S.D.N.Y. June 14, 2005).

customers to watch cable programming.[2]  Adelphia, SA and Motorola entered into arrangements described as follows in the Complaint:

> Beginning in 2000, Adelphia hatched a scheme to inflate the earnings reported on its financial statements. The conspiracy involved [SA] and Motorola engaging in a series of 'wash' transactions with Adelphia to generate artificial revenue. Specifically, [SA] and Motorola overcharged Adelphia for equipment and 'washed' the overcharges by paying the same amounts back to Adelphia for fictional 'marketing support' services. The 'marketing support' revenue was recognized by Adelphia immediately but was not offset by the increased equipment expense which was amortized into the future. Thus, Defendants conspired with Adelphia to enhance the appearance of its current financial performance.

(Complaint, ¶ 1.)[3]  Plaintiffs are purchasers of Adelphia securities.

**2.**

The complaint alleges claims for (i) common law fraud, (ii) conspiracy to defraud, and (iii) punitive damages and attorneys' fees.

Defendants move for dismissal on a variety of grounds: that the claims are preempted by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f); that the claims are

---

[2] Defendants Haislip and Eidson were officers of SA.

[3] See this Court's Memorandum and Order dated August 5, 2009, 2009 WL 2407835 ("LACERA Order"), sustaining, under California law, claims arising out of the same scheme. See also this Court's Memorandum and Order of June 16, 2009, in Argent Classic Convertible Arbitrage Fund L.P. v. Scientific-Atlanta, Inc. (04 Civ. 5759), 2009 WL 1686896 dismissing claims under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 based on the same scheme, pursuant to Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148 (2008).

barred by limitations; that plaintiffs have failed to allege claims on which relief can be granted, and, further, have failed to plead with the particularity required by Fed. R. Civ. P. 9(b); and that plaintiffs have failed to join Adelphia, an indispensable party under id. 12(b)(7) and 19.

On a motion for dismissal under id. 12(b)(6), a court must accept all non-conclusory factual allegations as true, and may consider documents incorporated into the complaint by reference; "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (footnote omitted)). Rule 9(b) requires that, "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud. . . ." Id. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id.

### 3.

Plaintiffs' claims are not preempted by SLUSA for substantially the reasons set forth in the LACERA Order, 2009 WL 2407835 *2.

### 4.

Adelphia is not an indispensable party for the reason set forth in the LACERA Order. Id.

**5.**

Defendants argue that this Court should dismiss the complaint as barred by the former one/three year statue of limitations applicable to claims under the federal securities laws. (Motorola Mem. at 6-8; SA Mem. at 6 (adopting Motorola argument).) Plaintiffs' claims, however, are not brought under any federal law, and the limitation period urged is not applicable here.

**6.**

In a multidistrict case, "a federal court ruling upon questions of state law [is required] to apply the same state substantive law, including choice-of-law rules, that would have been applied by a state court in the jurisdiction in which a case was filed." Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993).

Since the present case was filed in the State of Georgia, the Georgia choice-of-law rule must be ascertained.

"Georgia follows the approach to choice of law issues embodied in the First Restatement of Conflicts of Laws, employing the traditional rules of lex loci contractus and lex loci delecti [sic]. . . . Under the rule of lex loci delecti [sic], 'tort cases are governed by the substantive law of the state where the tort was committed.'" Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc., 133 F.3d 1405, 1409 (11th Cir. 1998) (quoting Lloyd v. Prudential Sec., Inc., 438 S.E.2d 703, 704 (Ga. Ct. App. 1993)) (footnote omitted).

See also Fed. Ins. Co. v. Nat. Distri. Co., Inc., 417 S.E.2d 671, 673-674 (Ga. Ct. App. 1992).

"Under the rule of lex loci delictis [sic], tort cases are generally governed by the substantive law of the place where the tort or wrong occurred. In torts of a transitory nature, the place of the wrong is the place where the last event occurred necessary to make an actor liable for the alleged tort. As to the fraud claim, the substantive law will be governed by the state where the 'last event' occurred." Int'l Bus. Machs. Corp. v. Kemp, 536 S.E.2d 303, 306 (Ga. Ct. App. 2000) (citations and footnote omitted).

> The elements of fraud are: "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." Only fraud which results in damage is actionable. OCGA § 51-6-1. Thus, the "last event" necessary to make an actor liable for fraud is the injury, and consequently, for purposes of lex loci delictis [sic], the place of the wrong is where that injury is sustained.

Id. (Other citations omitted) (quoting Crawford v. Williams, 258 Ga. 806 (1989)). The Supreme Court of Georgia, in 2005, adhered to the rule lex loci delicti. Dowis v. Mud Slingers, Inc., 621 S.E.2d 413, 414 (Ga. 2005); nothing in Dowis suggests that the Georgia courts, in fraud cases, will not continue to hold that the last event necessary to liability is injury to the plaintiff, so that the governing law will be that of the place where the plaintiff is located. See Luigino's Int'l, Inc. v. Miller, 311 Fed. Appx. 289,

5

292 2009 WL 330861 (11th Cir. 2009) (stating that "under Georgia's choice of law doctrine of lex loci delictis [sic], the law of the state where the injury occurred governs the fraud action," citing Int'l. Bus. Machs., 536 S.E.2d 306, and applying Florida's economic loss doctrine).[4]

The plaintiffs in this action have their principal places of business in a wide variety of jurisdictions: the states of New York, Illinois, Texas, California and Wisconsin, and also Bermuda, the British Virgin Islands, and the Cayman Islands. (Complaint, ¶ 5.)[5]

---

[4] SA also argues that "a Georgia trial court shall presume that the law of Georgia applies "'where no statute of the foreign State is pleaded.'" and "[t]hus, the Georgia common law of fraud applies." (SA Reply Mem. 5. (quoting Avent Inc. v. Wyle Labs., Inc., 437 S.E.2d 302, 306 (Ga. 1993)). This misstates the very sentence by the Supreme Court of Georgia in Avnet from which SA excerpted the language; the full sentence is: "'[W]here no statute of the foreign State is pleaded, it will be presumed that the common law prevails in such State.'" Avent, 437 S.E. 306 (quoting Slaton v. Hall, 148 S.E. 741, 743 (Ga. 1929)). The "common law" to be applied is not Georgia law -- as SA suggests -- but, rather, is the "common law [that] is presumed to be the same in all the American states in which it prevails." Slaton, 148 S.E. 743. Although a Georgia court is not bound by constructions of the common law by other courts and instead may adhere to constructions by Georgia courts, it nevertheless is applying what it deems to be the law of that other state (i.e., the common law). See id. at 743-44. As set forth herein, this court followed Georgia choice-of-law rules to determine the jurisdictions whose substantive laws apply. Having done so, this Court is not bound by Georgia's pleading rules, presumptions, or the interpretations of the laws of such other jurisdictions that might bind a Georgia court.

[5] The place of business of plaintiff HBK Offshore Fund Ltd. is not identified. (Id. ¶ 5(e).)

6

Motorola acknowledges that analysis should begin with the Georgia choice-of-law rules, and argues that that rule points to the place where the tort was committed, and assumes that jurisdiction to be Pennsylvania, where Adelphia and the relevant Motorola office were located.  (Motorola Mem., at 8-9 n.5.)  SA appears to agree.  (SA Mem. at 12-13 & n.15.)

Plaintiffs' analysis of the Georgia choice-of-law rules is substantially that set forth above by the Court, so that the laws of the plaintiffs' states -- and nations, presumably -- will govern the plaintiffs' claims respectively.  (Pl. Mem. at 7-9.)  Plaintiffs, however, do not set forth the law of the jurisdictions that they argue (correctly) to be applicable to the motion, stating that "[i]t is unfair to expect Plaintiffs, as <u>responding</u> parties, to guess what such arguments would be."  (<u>Id.</u> at 9.)  Plaintiffs add that "they will seek the right to serve sur-reply papers should the Moving Defendants address for the <u>first time</u> in their reply briefs claims that are actually brought under the laws of other[] states [than Georgia and Pennsylvania]."  (<u>Id.</u>)

Motorola, in reply, cites cases applying the laws of New York, Illinois, Texas, California, Wisconsin, Georgia, and England (Motorola Reply Mem. at 8-9), and SA continues to rely on the law of Georgia.  No sur-reply has been filed or sought to be filed.

In these less than illuminating and disappointing circumstances, the Court will rule on the basis of the law of the states of the principal places of business of those plaintiffs

7

which are located in identified states.  As to those plaintiffs whose principal places of business are not located in the United States, but in Bermuda, the British Virgin Islands and the Cayman Islands (and also the plaintiff whose principal place of business is not identified, see n.5, supra), as to which the Court has not been given the information on which to proceed, the Court will presume the applicable law to be that of the forum.  In re Nigeria Charter Flights Contract Litig., 520 F.Supp.2d 447, 458 (E.D.N.Y. 2007); In re Parmalet Sec. Litig., 383 F.Supp.2d 587, 595 (S.D.N.Y. 2005).[6]

**7.**

> The Court begins with the law of New York, where:
>
> An action for common-law fraud lies where one party misrepresents a material fact, knowing it to be false, and another party, relying on the falsehood, suffers an injury as a consequence of the fraudulently induced reliance.  Thus, "[i]n order to establish a cause of action in fraud, plaintiff must show that defendant[s] misrepresented a material fact, [they] did so knowingly, the misrepresentation was justifiably relied on and some injury or damages resulted."

---

[6] Bermuda, the British Virgin Islands and the Cayman Islands are self-governing British overseas territories which have laws of their own but also look to the common law of Great Britain as persuasive.  The English case cited by Motorola, Jaffray v. Soc'y of Lloyd's, [2002] EWCA (Civ.) 1101, 2002 WL 1654876, breaks down the elements of deceit (fraud) to require (i) a representation, that was (ii) material and (iii) untrue; that the defendant (iv) "when it made the representation, ... knew or believed that it was untrue or made it recklessly, careless whether it be true or false" and (v) "intended that the representation should be relied upon . . ." that (vi) the plaintiff in fact relied upon the representation and (vii) suffered loss as a result.  Id. at [49].  Apart from the possibility of an actionable reckless misrepresentation, the Jaffray enumeration of elements does not appear to be materially different than the law of the forum, New York.

CFJ Assocs. of N.Y., Inc. v. Hanson Indus., 711 N.Y.S.2d 232, 235 (App. Div. 3d Dep't 2000) (alterations in original) (quoting Fitch v. TMF Sys., 707 N.Y.S.2d 539, 540 (App. Div. 3d Dep't 2000)) (other citations omitted).

> Although New York law does not recognize an independent tort of conspiracy, "[i]f an underlying, actionable tort is established, ... plaintiff may plead the existence of a conspiracy ... to demonstrate that each defendant's conduct was part of a common scheme." To establish its claim of civil conspiracy, [a plaintiff] must demonstrate the primary tort, plus the following four elements:  (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.

World Wrestling Fed'n Entm't, Inc. v. Bozell, 142 F.Supp.2d 514, 532 (S.D.N.Y. 2001) (quoting Sepenuk v. Marshall, No. 98 Civ. 1569, 2000 WL 1808977, at *6 (S.D.N.Y. Dec. 8, 2000) (citation omitted). See also Meisel v. Grunberg, ____ F.Supp.2d ____, No. 07 Civ. 11610, 2009 WL 2777165, at *14 (S.D.N.Y. Aug. 31, 2009).

**8.**

> [U]nder Illinois law, the plaintiff must prove by clear and convincing evidence that:  (1) the defendant made a false statement of material fact; (2) the defendant knew or believed that the statements were false, or the statements were made with a reckless disregard of whether they were true or false; (3) the statements were made with the intent to induce action; (4) the plaintiff reasonably believed the statements and justifiably acted in reliance on those statements; and (5) the plaintiff suffered damages as a result.

Kapelanski v. Johnson, 390 F.3d 525, 530-31 (7th Cir. 2004) (citation omitted).  See also Athey Prods. Corp. v. Harris Bank Roselle, 89 F.3d 430, 434 (7th Cir. 1996).

Illinois recognizes a cause of action for conspiracy to defraud.  To sustain such a claim "a plaintiff must show '(1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud.'" Omnicare, Inc. v. UnitedHealth Group, Inc., 594 F.Supp.2d 945, 979-80 (N.D. Ill. 2009) (quoting Bosak v. McDonough, 549 N.E.2d 643, 646 (Ill. App. Ct. 1st Dist. 1989)).

**9.**

As to the law of Texas, "[a] fraud cause of action requires 'a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.'" Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, 960 S.W.2d 41, 47 (Tex. 1998) (quoting Sears Roebuck & Co. v. Meadows, 877 S.W.2d 281, 282 (Tex. 1994)) (other citations omitted).

Texas recognizes a cause of action for civil conspiracy -- "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." Firestone Steel Prod. Co. v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996) (citations omitted).

> Civil conspiracy requires specific intent. For a civil conspiracy to arise, the parties must be aware of the harm or the wrongful conduct at the beginning of the combination or agreement. One cannot agree, expressly or tacitly, to commit a wrong about which he has no knowledge. Given the specific intent requirement, parties cannot engage in a civil conspiracy to be negligent.

Id. (citations omitted).

**10.**

In California, "[t]o state a cause of action for fraud, a plaintiff must allege '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance and (e) resulting damage'" Neilson v. Union Bank of Cal., N.A., 290 F.Supp.2d 1101, 1140-41 (C.D. Cal. 2003) (quoting Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 974 (1997)).

In California, an action for civil conspiracy requires, first, that there be an underlying wrong -- here, fraud -- and then the formation and operation of the conspiracy and damage to the plaintiff from an act or acts done in furtherance of the common design. Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 869 P.2d 454, 457 (Cal. 1994) (en banc).

**11.**

The elements of fraud in Wisconsin are that the defendant (i) made a representation of fact (ii) which was untrue, that the untrue representation (iii) "was made by the defendant knowing the

11

representation was untrue or recklessly without caring whether it was true or false" and (iv) "with intent to deceive and induce the plaintiff to act upon it to the plaintiff's pecuniary damage," and that (v) the plaintiff believed and relied on the representation. Digicorp, Inc. v. Ameritech Corp., 662 N.W.2d 652, 663 n.10 (Wis. 2003) (citations omitted).

Wisconsin recognizes a cause of action for conspiracy to defraud. Cali v. Danek Med., Inc., 24 F.Supp.2d 941, 949 (W.D. Wis. 1998), mot. to amend judg. denied, 1998 WL 1166779 (W.D. Wis. Aug. 7, 1998). "In order to succeed on [a] conspiracy claim under Wisconsin law plaintiff must demonstrate a concerted action to accomplish an unlawful purpose." Id. (citation omitted).

> It is not enough, however, to prove the mere existence of a conspiracy:
>
>> A conspiracy may produce one or more torts. If it does, then every conspirator is liable for that tort, including a conspirator who promoted but did not commit the tort. A conspiracy is not, itself, a tort. It is the tort, and each tort, not the conspiracy, that is actionable.
>
> Accordingly, plaintiff must also establish all elements of the underlying misrepresentation claim as applied to him.

Id. (quoting Segall v. Hurwitz, 339 N.W.2d 333, 338 (Wis. Ct. App. 1983)).

## 12.

It is apparent from a fair reading of the Complaint that neither SA nor Motorola made a misrepresentation itself; such

misrepresentations as were made were made by Adelphia. Since the making of a misrepresentation is, in substance, required under the law of each state whose law will be applied for a claim for common law fraud(for the reasons set forth above), Count I of the Complaint is dismissed as to every plaintiff.[7]

**13.**

Each of the states whose law is to be applied recognizes an action for conspiracy to defraud. The Court finds that the Complaint, in Count II, adequately alleges such a claim encompassing all of its necessary elements, including those challenged by defendants. It alleges a misrepresentation (by Adelphia), conspiratorial conduct by Adelphia on the one hand and either SA or Motorola on the other, overt acts in the alleged preparation of documentation, the necessary intent, plaintiffs' reliance and causation, all in a manner that satisfies Fed. R. Civ. P. 9(b). Accordingly, the motion for dismissal is denied as to Count II of the Complaint.

SO ORDERED.

Dated: December 21, 2009

_____
Lawrence M. McKenna
U.S.D.J.

---

[7] If plaintiffs believe that they can replead Count I consistently with Fed. R. Civ. P. 11, they may do so, not later than 21 calendar days from the date hereof.