```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

ADELPHIA RECOVERY TRUST,             :

                Plaintiff,           :    05 Civ. 9050 (LMM)
                                          (related to 03 MDL 1529)
        - against -                  :
                                          MEMORANDUM AND ORDER
BANK OF AMERICA, N.A. et al.,        :

                Defendants.          :

------------------------------------x
```

McKENNA, D.J.,

**1.**

The Bank Defendants move, pursuant to Fed. R. Civ. P. 16 and 56 for an order determining that plaintiff Adelphia Recovery Trust ("ART") lacks standing to pursue claims 32, 36, 37, 38, 40, 53 and 55 of the Second Amended Complaint ("SAC") on behalf of Adelphia Communications Corporation ("ACC").[1] The Bank Defendants argue that the harms for which ART seeks redress in the claims at issue are harms to what are known as the Obligor Debtors, direct or indirect subsidiaries of ACC; it was the Obligor Debtors that entered into the Co-Borrowing Facilities and became liable to repay the moneys loaned under those facilities, much of which was used for no corporate business purpose but for the personal benefit of members of the Rigas family. ACC was not a party to the Co-

---

[1] See Notice of Motion, October 2, 2009, at 1-2, identifying the Bank Defendants.
  For present purposes, ACC includes Arahova Corporation and Adelphia Cablevision Corporation.

Borrowing Facilities and was not liable under them.  The Bank Defendants rely on a rule restated in numerous cases to the effect that "[a] shareholder -- even the sole shareholder -- does not have standing to assert claims alleging wrongs to the corporation." Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731, 736 (2d Cir. 1987).

ART cross-moves for summary judgment pursuant to Fed. R. Civ. P. 56, and the Bank Defendants move to strike ART's Local Rule 56.1 Statement.

**2.**

On the issue whether a shareholder has standing to assert a direct claim on behalf of the corporation of which it is a shareholder, the rule in the Second Circuit is that the law of the state of incorporation of the corporation governs.  Bartfield v. Murphy, 578 F.Supp.2d 638, 645 (S.D.N.Y 2008) (citing Struogo v. Bassini, 282 F.3d 162, 168-69 (2d Cir. 2002)).

ACC, and all but two of the Obligor Debtors, are incorporated in Delaware.  (The two non-Delaware Obligor Debtors are incorporated in Connecticut and Virginia, whose law, defendants have shown, is substantially the same as that of Delaware in relevant respects; see Def. Mem. at 9 n.10.)  The Court thus follows Delaware law on the issue of standing.

**3.**

Delaware law on the issue in question is found in two recent decisions of the Delaware Supreme Court, Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004), and In re J.P. Morgan Chase & Co. S'holder Litig., 906 A.2d 766 (Del. 2006).

Tooley says that the standard for determining whether a claim is direct, i.e., one that a shareholder can bring in its own right, or derivative, turns solely on "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)." 845 A.2d 1033. Tooley further states that: "The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." Id. at 1039.

ART argues that there are applicable exceptions to this rule. Three of the decisions it cites, however -- General Rubber Co. v. Benedict, 215 N.Y. 18 (N.Y. 1915) (Cardozo, J.), Quantel Corp. v. Niemuller, 771 F.Supp. 1361 (S.D.N.Y. 1991), and In re First Cent. Fin. Corp., 269 B.R. 502 (Bankr. 2001) -- apply New York law, not Delaware law, which governs.

One of ART's cases -- Case Fin., Inc. v. Alden, Civ. No. 1184 VCP, 2009 WL 2581873 (Del. Ch. Aug. 21, 2009) -- does apply Delaware law.  There, the Vice Chancellor noted Tooley, but departs from it to the extent that he concluded that the defendant that was sued by the plaintiff corporation with respect to conduct by the defendant while an officer of the plaintiff corporation's subsidiary, was also an officer and director of the plaintiff parent corporation, to which he owed (and was alleged by his conduct to have breached) fiduciary obligations.  That pattern is not present in this case, however, where the defendants are only alleged aiders and abettors of persons (the Rigases) who had fiduciary obligations to ACC.  ART has not shown any authority or persuasive rationale to extend the exception to Tooley found in Case Financial to include aiders and abettors.

**4.**

ART suggests that the Court may have passed on the present issue in its January 17, 2008 Memorandum and Order, 390 B.R. 64, deciding appeals from several rulings of Bankruptcy Judge Gerber.

In that decision, the Court considered standing only as to Claim 37 of the Unsecured Creditors' Committee Complaint (which is substantially the same as Claim 37 of the current Second Amended Complaint).  The argument that ART lacked standing to pursue that claim was based on the assertion that the complaint did not

adequately allege that each of the almost 250 Adelphia entities --
i.e., ACC, and all of its subsidiaries -- had suffered an injury personal to itself.  The Court concluded, however, that the moving party, Calcyon, had failed to demonstrate that the multiple Adelphia debtors, including the Obligor Debtors as they are now called, "are not harmed, and that in a common way."  (See 390 B.R. 71.)  The issue whether Adelphia the parent (ACC) had suffered injury sufficient for ART to have standing to sue on behalf of ACC, as distinct from the Obligor Debtors, was not before the Court, nor was there occasion to consider Toomey and J.P. Morgan.  Nothing in the January 17, 2008 decision governs decision of the present motion.

**5.**

Turning to the facts underlying the present motion, it is, in the first place, plain that the immediate injury caused by the Co-Borrowing Facilities and the Rigases' abuse of them was to the Obligor Debtors.  They were parties to the Co-Borrowing Facilities and liable for all of the borrowed amounts and ACC was not.  The harm to ACC was derivative, and ART cannot show, as Toomey requires, that it can prevail without showing injury to the Obligor Debtors.

ACC, of course, did issue debt securities which it could not repay.  The direct harm in that case, however, is to the holders of the securities, not ACC.  See Kirschner v. Grant

Thornton, LLP, 2009 WL 1286326, at *8 (S.D.N.Y. 2009) (Lynch, J.) (appeal pending). Here, the holders of the securities have generally been quite active in pursuit of their rights.

As to ACC's payment of $1.4 billion in bankruptcy or reorganization costs, the economic reality of the payment of those costs is that the money that was paid was the proceeds of the sale of the Obligor Debtors' cable assets to Time Warner and Comcast, however the transaction was structured as a matter of form.

ART argues that the Co-Borrowing Fraud "directly and discretely injured ACC by allowing the Rigases to raise capital, retain control, and conduct operations in an economically irrational manner." (ART Mem. at 9.) But ART has not shown how the acquisition of money by the Obligor Debtors caused what the Rigases did with it, or how they managed or mismanaged ACC and its subsidiaries once the money was in hand. In Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985), the Second Circuit affirmed the dismissal of such a claim. Id. at 60-63. See also In re Parmalat Sec. Litig., 501 F.Supp.2d 560, 579-80 (S.D.N.Y. 2007).

**6.**

For the foregoing reasons, the Court concludes that the ART has not sustained its burden to show that it has standing to sue the Bank Defendants on behalf of ACC, and defendants' motion, under Fed. R. Civ. P. 16, is granted.

Rule 56 does not fit well with the issue of standing, which is a threshold issue that should be decided before proceeding further. It would not be appropriate to leave standing as a trial issue, even if there were material issues of fact as to standing. Both sides' motions for summary judgment are therefore denied as moot, in view of the Court's decision under Rule 16.

The Bank Defendants' motion for an order striking the damages report of the ART's expert, Dr. Bernheim, is denied. The Court has considered it in the effort to see all of the facts that might be relevant to standing, understanding, of course, that, to the extent the report may be understood to express or imply an opinion on a legal issue, that opinion cannot be considered, since experts cannot testify as to domestic law.

SO ORDERED.

Dated:   December **21**, 2009

_____
Lawrence M. McKenna
U.S.D.J.