UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
IN RE ADELPHIA COMMUNICATIONS       :        03 MDL 1529 (LMM)
CORPORATION SECURITIES AND          :
DERIVATIVE LITIGATION               :        MEMORANDUM AND ORDER
                                    :
------------------------------------x
                                    :
THIS DOCUMENT RELATES TO            :
04 Civ. 3961                        :
                                    :
------------------------------------x

McKENNA, D.J.,

**1.**

        This action -- C. Philip Rainwater v. Deloitte & Touche
LLP (04 Civ. 3961) -- was filed in the United States District Court
for the Eastern District of Virginia, and transferred to this
district for inclusion in the above-identified multidistrict
litigation.[1]

        Adelphia Communications Corporation ("Adelphia") was a
provider of cable television.  In March of 2001, plaintiff and
other shareholders of Benchmark Media, Inc. ("BMI"), which owned
and operated cable televsion systems, sold their respective
interests in BMI to Adelphia for a total purchase price of $220
million, $115 million in cash (to be used to pay liabilities of
BMI) and $105 million in Adelphia stock;  plaintiff received
695,307 shares of Adelphia (Am. Compl. ¶ 8), worth about $45 per

_____

        [1] The Court assumes familiarity with all underlying facts and the
identities of persons mentioned as described in prior decisions in this
multidistrict litigation.

share in March of 2001 (id. ¶ 11), and just about worthless by the

spring and early summer of 2002.  (Id. ¶ 17.)  Adelphia and its

affiliates filed for bankruptcy in June of 2002.  (Id. ¶ 18.)

Plaintiff alleges that he received from Adelphia, and

relied on in entering into the March 2001 transaction, Adelphia's

quarterly reports on Securities and Exchange Commission ("SEC")

Form 10-Q for the quarters ended March 31, June 30 and

September 30, 2000, its annual report on Form 10-K for the year

ended December 31, 1999 (as amended by Form 10-K/A-2), and its

Prospectus dated May 14, 1999 and Prospectus Supplement thereto

dated January 17, 2001.  (Am. Compl. ¶¶ 9-10.)

Plaintiff alleges that:

In its capacity as the independent auditor for
Adelphia, Deloitte issued an opinion on the
financial statements of Adelphia at and for the
year ended December 31, 1999.  In its opinion on
those financial statements, Deloitte said the
following:  (1) that Deloitte had conducted an
audit of the financial statements in accordance
with GAAS; (2) that Deloitte had planned and
performed that audit to obtain reasonable assurance
about whether the financial statements were free of
material misstatements; (3) that, in Deloitte's
opinion, the financial statements presented fairly,
in all material respects, the financial position of
Adelphia as of the dates of those financial
statements and the results of operations and cash
flows of Adelphia for the periods covered by such
financial statements in conformity with GAAP; (4)
that, in Deloitte's opinion, the financial
statement schedules included with such financial
statements, when considered in relation to the
financial statements taken as a whole, present
fairly in all material respects the information set
forth therein and (5) that Deloitte's audit
provided a reasonable basis for its opinion.

(Pl. Mem. at 7 (citing Am. Compl. ¶ 72).)   "Each of the foregoing statements," plaintiff alleges, "constituted a knowing or reckless misrepresentation by Deloitte of a material fact."   (Id. (citing Am. Compl. ¶¶ 72, 73 & 74).)

The amended complaint asserts five claims:   (i) Count One, for violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5; (ii) Count Two, for violation of Section 18 of the Securities Exchange Act of 1934, 15 U.S.C. § 78r; (iii) Count Three, for common law fraud; (iv) Count Four, for constructive fraud; and (v) Count Five, for aiding and abetting fraud or constructive fraud.

**2.**

Deloitte & Touche LLP ("Deloitte"), Adelphia's auditor at the times relevant to the amended complaint, moves pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) for dismissal of the amended complaint.

On a motion under Fed. R. Civ. P. 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor; the court

> may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.  To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual

allegations sufficient "to raise a right to relief above the speculative level."

ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, (2007) (footnote omitted) (other citation omitted)).  Pursuant to Fed. R. Civ. P. 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

**3.**

Plaintiff's first claim alleges the violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.  (Am. Compl. ¶ 69.) "To state a claim under § 10(b) and Rule 10b-5, plaintiffs must allege that [the defendant] '(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury.'"  Lattanzio v. Deloitte & Touche LLP, 476 F.3d 147, 153 (2d Cir. 2007) (quoting In re IBM Sec. Litig., 163 F.3d 102, 106 (2d Cir. 1998)).  Defendant argues that plaintiff fails to adequately allege scienter and loss causation.  (Def. Mem. at 8-17.)

**4.**

"Scienter," in the Section 10(b) context, "refers to a mental state embracing intent to deceive, manipulate or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976).

"In order to plead scienter adequately under the [Private Securities Litigation Reform Act], a plaintiff must plead 'with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" ECA & Local 134 IBEW Joint Pension Trust of Chicago v. J.P. Morgan Chase Co., 553 F.3d 187, 198 (2d Cir. 2009) (quoting 15 U.S.C. § 78u-4(b)(2) (emphasis by Court of Appeals)). "In addition to intent, recklessness is a sufficiently culpable mental state for securities fraud in [the Second Circuit]." Id. In considering whether the inference that the defendant acted with the requisite state of mind is of the requisite strength, the "court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" Tellabs, Inc. v. Makor Issues & Rights, Ltd., 511 U.S. 308, 326 (2007).

"The requisite scienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." ECA, 553 F.3d at 198 (citations omitted).

Plaintiff argues that:

> Deloitte's motive was to secure and maintain
> Adelphia's business, as well as other business from
> the Rigas Family besides the auditing work, such as
> tax, consulting and other accounting work.   In
> particular, Deloitte was motivated by a desire to
> continue to perform accounting services for the
> Rigas Family Entities.    These services were a
> source of revenue to Deloitte that far exceeded the
> funds it earned from performing audit services for
> Adelphia.    Deloitte had a clear motive not to
> dispute the Rigas Family on this point; had
> Deloitte not acquiesced, the Rigas Family could
> have taken the Rigas Family Entities' work away
> from Deloitte without incurring any negative
> consequences.

(Pl. Mem. at 9-10 (quoting Am. Compl. ¶ 84).)   In other words,
plaintiff "alleges that Deloitte was motivated by the desire to
continue to receive lucrative non-audit fees not just from Adelphia
but from a number of other Rigas-controlled entities."   (Id. at 11
(citing Am. Compl. ¶ 84).)

Plaintiff argues that, where the motive of an auditor is
an alleged desire to increase its non-audit practice, such motive
satisfies the scienter requirement.   (Pl. Mem. at 10 (citing In re
Global Crossing, Ltd. Sec. Litig., 322 F.Supp.2d 319, 345-46
(S.D.N.Y. 2004)).   In Global Crossing, the district court did find
that "the Complaint adequately sets forth a motive distinct from
mere profit, namely [defendant] Anderson's desire to build its
consulting practice.   322 F.Supp.2d at 345.   But the complaint
alleged considerably more than that motive.   It alleged not only
that Anderson was led by the motive "to abandon its obligations as

an independent auditor," but "push[ed] its auditing clients to
adopt risky and misleading accounting practices," and so "to
participate actively in the Companies' schemes to defraud
investors." Id. (citing complaint). See also the district court's
descriptions of the ratio of Anderson's income from the auditing
and consulting, respectively, aspects of its work for the
Companies, and Anderson's aggressive marketing. Id. at 346 (citing
complaint).

Plaintiff has not adequately alleged scienter, as was
done in Global Crossing. Plaintiff may replead within 20 days of
the date hereof.

**5.**

"A private plaintiff who claims securities fraud must
prove that the defendant's fraud caused an economic loss." Dura
Pharms., Inc. v. Broudo, 544 U.S. 336, 338 (2005). This
requirement is called "loss causation." Id. The loss causation
requirement cannot be satisfied "simply by alleging in the
complaint and subsequently establishing that 'the price' of the
security 'on the date of purchase was inflated because of the
representation.'" Id. (quoting decision below, Broudo v. Dura
Pharms., Inc., 339 F.3d 933, 938 (9th Cir. 2003)). Plaintiff does
make the latter allegation (see Am. Compl. ¶ 85).

In resisting dismissal on loss causation grounds,
however, plaintiffs rely on other allegations. (Pl. Mem. at 15

(citing Am. Compl. ¶¶ 12, 17 & 87)).  Those allegations -- "a series of disclosures beginning in the Spring of 2002" regarding the Rigas family's looting of Adelphia and concealment "by causing [Adelphia] to file false and misleading financial statements" (Am. Compl. ¶ 12), the decline in the value of Adelphia's stock "[f]ollowing the revelations of financial malfeasance in the Spring of 2002" and "heightened public scrutiny of Adelphia's accounting practices and financial reporting" (id. ¶ 17), and that "when the truth became known in the spring of 2002" (id. ¶ 87), the value of Adelphia's stock fell -- go some part of the way to an adequate allegation of loss causation, but not far enough.

Plaintiff is required to allege that the "particular misstatements alleged caused their alleged loss," Lattanzio, 476 F.3d at 157, and "a sufficient connection between [those] misstatements and the losses suffered as a result" of the decline in value of Adelphia stock, id., that is, that the "misstatements concealed the risk" of the decline in value of Adelphia stock. Id. And, under Fed. R. Civ. P. 9(b), the allegations of loss causation must be alleged with particularity.  The specific misrepresentations must be identified, what was concealed from the market must be identified, and the specific information that became public that showed the representations to be misrepresentations must be identified.

For the foregoing reasons, the Court concludes that Count One of the Amended Complaint does not adequately allege loss causation.  Plaintiff may replead within 20 days of the date hereof.

**6.**

Defendant seeks dismissal of Count Two of the Amended Complaint, alleging the violation of Section 18 of the Exchange Act, 15 U.S.C. § 78r, for failure to adequately allege reliance and loss causation.

> Section 18 provides an alternative to Section 10(b) for  plaintiffs seeking to hold defendants liable for Exchange Act filings containing materially false or misleading statements.  Unlike Section 10(b)'s relaxed standard for pleading reliance, however, Section 18 requires that plaintiffs allege actual reliance on specific statements in covered Exchange Act filings.

In re Marsh & McLennan Cos., Inc. Sec. Litig., 501 F.Supp.2d 452, 493 (S.D.N.Y. 2006) (citing 15 U.S.C. § 78r(a) and Heit v. Weitzen, 402 F.2d 909, 916 (2d Cir. 1968)).

**7.**

Plaintiff argues that it has adequately alleged reliance. (Pl. Mem. at 17 (citing Am. Compl. ¶¶ 9, 10, 92, 93)).  Plaintiff has there alleged, generally, reliance on Adelphia's amended Form 10-K for the year ended December 31, 1999 and the other documents he alleges he received from Adelphia (see Am. Compl. ¶ 9), and that he "actually read, reviewed and relied on the false and materially misleading statements contained in these documents in making the

decision to acquire Adelphia securities in exchange for his interest in BMI." (Am. Compl. ¶ 93.)[2] Plaintiff does not, however, allege the specific misleading statements upon which he relied, which is required.

For the forgoing reasons, the Court concludes that Count II of the Amended complaint does not adequately allege reliance. Plaintiff may replead within 20 days of the date hereof.

**8.**

Defendant also seeks dismissal of Count II for failure to adequately plead loss causation. For the reasons set forth in Section 5, <u>supra</u>, of this Memorandum and Order, the Court agrees, and concludes that Count II of the Amended Complaint does not adequately plead loss causation. Plaintiff may replead within 20 days of the date hereof.

**9.**

Plaintiff's remaining claims, for common law fraud, constructive fraud, and aiding and abetting fraud and constructive fraud (<u>see</u> Am. Compl., Counts III, IV and V) are all asserted under state law. Defendant argues that all of such claims should be dismissed under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p and 78bb(f), as being part of a

---

[2] The amended Form 10-K for the year ended December 31, 1999 is the relevant document. As defendant points out (Def. Mem. at 4 n.2 (citing, <u>inter alia</u>, <u>Lattanzio</u>, 476 F.3d at 156)) the quarterly reports cannot form the basis of a Section 10(b) or Section 18 claim.

"covered class action" because it is "coordinated for pre-trial purposes" with other cases that pursue claims on behalf of more than 50 plaintiffs that share "common questions of law and fact." 15 U.S.C. §§ 77p, 78bb(f).

Under SLUSA, the term "covered class action" includes "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which -- (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose."   15 U.S.C. § 78bb(f)(5)(B).

The present action is one of more than 50 actions pending in this district as a multidistrict litigation in which damages are sought for more than 50 people.   It is plainly a covered class action which cannot be maintained in this or any state court.   15 U.S.C. § 78bb(f)(1).

Plaintiff has not made any persuasive arguments that would avoid the above conclusion.   Counts Three, Four and Five of the Amended Complaint are dismissed as precluded by SLUSA.

*          *          *

For the reasons set forth above, all of plaintiff's claims are dismissed, with leave to replead Count I and Count II as set forth above, within 20 days of the date hereof.

SO ORDERED.

Dated:   August 30, 2010

_____
Lawrence M. McKenna
U.S.D.J.