USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/16/2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
:
IN RE ADELPHIA COMMUNICATIONS :
CORPORATION SECURITIES AND DERIVATIVE : 03 MDL 1529 (LMM)
LITIGATION :
: MEMORANDUM AND ORDER
-----------------------------------:
:
THIS MEMORANDUM AND ORDER APPLIES TO :
03 Civ. 5755, 03 Civ. 5756, 03 Civ. 5757, :
03 Civ. 5758, 03 Civ. 5759, 03 Civ. 5760, :
03 Civ. 5761, 03 Civ. 5762, 03 Civ. 5763, :
03 Civ. 5764, 03 Civ. 5765, 03 Civ. 5766, :
03 Civ. 5768, 03 Civ. 5769, 03 Civ. 5770, :
03 Civ. 5771, 03 Civ. 5774, 03 Civ. 5775, :
03 Civ. 5776, 03 Civ. 5778, 03 Civ. 5780, :
03 Civ. 5781, 03 Civ. 5783, 03 Civ. 5784, :
03 Civ. 5785, 03 Civ. 5786, 03 Civ. 5787, :
03 Civ. 5790, 03 Civ. 5791, 03 Civ. 5792. :
:
------------------------------------x

McKENNA, D.J.,

On November 16, 2006, the Court approved a settlement of the claims in this consolidated class action against (i) defendant Deloitte & Touche LLP, and (ii) the defendant banks identified in Plaintiffs' Memorandum in Support of Proposed Settlements, at 1-2, n.2; at the same time, the Court approved an award of legal fees for counsel for the lead plaintiffs in the amount of 21.4% of the sum of the two settlements. (See Mem. & Order, Nov. 16, 2006.)

Early in this litigation, at the instance of the Court, law firms seeking to become class counsel -- Abbey Spanier Rodd & Abrams, LLP, and Kirby McInerney LLP (hereinafter collectively

COPIES MAILED TO COUNSEL 15 MAR 2011

"Abbey"), on the one hand, and Bernstein Litowitz Berger & Grossmann LLP, and Berman DeValerio (hereinafter collectively "Bernstein"), on the other -- came to an arrangement pursuant to which Abbey would act as class counsel, while

> [Bernstein] will play a significant role in the prosecution of this action and will contribute to major decisions affecting the litigation, including the identity of parties named in the Amended Complaint, discovery strategy, the terms of any proposed settlement and the division of any recovery that may ultimately be realized. To help accomplish the above, [Abbey], as co-lead counsel, will give to [Bernstein] assignments intended to generate 25% (but, in any event, not more than 25%) of the combined legal work of [Abbey] and [Bernstein]. [Bernstein] will be compensated for such work at the same rate as lead counsel, including any multiplier or other enhancement that may be approved by the Court.

(Letter, Bernstein to Abbey, who agreed and consented, Sept. 15, 2003 [Decl., Max W. Berger, Jan. 25, 2011, Ex. 3], at 2.)[1] The Court was not notified of the agreement until this year. See In re Agent Orange Prod. Liab. Litig., 818 F.2d 216, 226 (2d Cir. 1987).[2]

---

[1] The Court takes the September 15, 2003 letter, rather than earlier letters, as reflecting the governing agreement arguendo, noting, however, that that is disputed.

[2] Bernstein's suggestion that the agreement at issue is not a "fee-sharing agreement" (Corrected Bernstein Mem. in Opp'n., Jan. 26, 2011, at 1-3.) is not persuasive. Bernstein argues that "[it] claim[s] that [it was] entitled by contract to earn fees-to be allocated approximately 25% of the total work performed by [Bernstein] and [Abbey]. . . ." (Id. at 2.)

2

The agreement, and the dispute based on it, was brought to the Court's attention only when, in January of this year, Abbey moved this Court to enjoin Bernstein from proceeding in a New York County Supreme Court action against Abbey, filed on or about December 23, 2010, in which Bernstein seeks to recover "approximately $22 million in damages incurred as a consequence of [Abbey's] breach and repudiation of a contract dated September 15, 2003. . . ." (Sup. Ct. Compl., Bernstein v. Abbey [Decl. of Max W. Berger, Jan. 25, 2011, Ex. 1], ¶ 1.)

Bernstein opposes the Abbey motion principally on the ground that the Court does not have subject matter jurisdiction, there being neither a federal question nor diversity of citizenship. 28 U.S.C. §§ 1331 & 1332(a).

**2.**

The Court concludes that it has ancillary jurisdiction of the dispute at issue.

"One of the best-established uses of ancillary jurisdiction is over proceedings concerning costs and attorney's fees. Ancillary jurisdiction supports disputes concerning costs and fees for the case that invoked federal subject matter jurisdiction." 13 Charles Alan Wright, et al., Federal Practice & Procedure 218-19, § 3523.2 (3d ed. 2008) (footnote omitted). The Second Circuit has "consistently held that '[w]henever a district

3

court has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees.'" Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 225 (2d Cir. 2004) (quoting In re Austrian & German Bank Holocaust Litig., 317 F.3d 91, 98 (2d Cir. 2003) (other citation omitted)); see also, Garcia v. Teitler, 443 F.3d 202, 208 (2d Cir. 2006) (". . . we have long approved of the exercise of ancillary jurisdiction by district courts to resolve fee disputes in civil cases.")

Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994), does not support Bernstein's position. In Kokkonen, the Supreme Court held that a district court did not have subject matter jurisdiction over an underlying settlement agreement after the parties had signed, and the judge had so ordered, a stipulation of dismissal, pursuant to Fed. R. Civ. P. 41(a)(1)(ii) (1992), which "did not reserve jurisdiction in the District Court to enforce the settlement agreement; indeed it did not so much as refer to the settlement agreement." 511 U.S. at 377. The Kokkonen court pointed out that "[t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal -- either by separate provision (such as a provision 'retaining jurisdiction'

4

over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." 511 U.S. at 381.

Here, in fact, the two judgments of dismissal do reserve jurisdiction. That involving the banks provides:

> Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over the Parties for all matters relating to this Class Action, including (a) the implementation of the Settlement; (b) any award of the Settlement Fund, including interest earned thereon; and (c) all further proceedings concerning the administration, consummation and enforcement of the Stipulation, the Settlement and this Judgment.

(J. Dismissing Claims Against the Banks, Nov. 10, 2006 [Docket No. 466], ¶ 14.) That involving Deloitte & Touche LLP provides:

> Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation and enforcement of this Settlement and any award or distribution of the Gross Settlement Fund, including interest earned thereon; (b) disposition of the Gross Settlement Fund; (c) hearing and determining applications for payments out of the Settlement Fund, including without limitation, any amount for attorneys' fees, costs, interest and expenses (including fees and costs of experts and/or consultants) in the Class Action; and (d) all Settling Parties for the purposes of construing, enforcing and administering the Stipulation in this Class Action until the Effective Date has occurred and each and every act agreed to be performed by the Settling Parties has been performed. This Court shall maintain continuing jurisdiction over all Settlement Class Members for purposes of enforcing the terms of the Judgment.

(Final J. and Order of Dismissal with Prejudice, Nov. 10, 2006 [Docket No. 467], ¶ 21.)

The district's Local Civil Rule 23.1, it may be added, in requiring the disclosure of "any fee sharing agreements with anyone," S.D.N.Y. Local Rule 23.1, in relation to the award of fees by the Court in a class action, also suggests the Court's jurisdiction over such agreements.

For the foregoing reasons, the Court concludes that it has jurisdiction over the Abbey-Bernstein fee dispute.

**3.**

The Court also concludes that 28 U.S.C. § 2283 does not prevent it from enjoining the New York County Supreme Court action, because (for the reasons already explained) it has jurisdiction of the Abbey-Bernstein fee dispute, and the injunction is "necessary in aid of its jurisdiction" over that dispute. 28 U.S.C. § 2283.

**4.**

Since this Court has jurisdiction over the Abbey-Bernstein fee dispute, the plaintiffs in the action <u>Bernstein Litowitz Berger & Grossmann LLP, et al. v. Abbey Spanier Rodd &</u>

<u>Abrams, LLP, et al.</u> (Index No. 652379 (2010)) pending in the New York County Supreme Court are enjoined from any further prosecution of such action.

Dated: March 15, 2011

SO ORDERED.

_____
Lawrence M. McKenna
U.S.D.J.