USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/27/2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
IN RE ADELPHIA COMMUNICATIONS       :    03 MDL 1529 (LMM)
CORPORATION SECURITIES AND          :
DERIVATIVE LITIGATION               :    MEMORANDUM AND ORDER
                                    :
------------------------------------x
                                    :
THIS DOCUMENT RELATES TO            :
07 Civ. 11152                       :
                                    :
------------------------------------x

McKENNA, D.J.,

1.

    This action -- <u>Adelphia Recovery Trust v. Prestige Communications of NC, Inc., Jonathan J. Oscher, Lorraine Oscher McLain, Robert F. Buckfelder, Buckfelder Investment Trust & Anverse, Inc.</u>, (07 civ. 11152) -- was commenced in June of 2004 as an adversary proceeding in the Chapter 11 cases of Adelphia Communications Corporation ("ACC") and its subsidiaries in the United States Bankruptcy Court for the Southern District of New York. An amended complaint was filed in the Bankruptcy Court in March of 2007. By Memorandum and Order dated January 8, 2008, this Court withdrew the reference to the Bankruptcy Court, pursuant to 28 U.S.C. § 157(d). The case was included in the above identified Multidistrict litigation. By Memorandum and Order dated November 23, 2010, this Court granted plaintiff leave to file a

Second Amended Complaint, which was docketed on or about December 14, 2010 (Docket No. 108) ("SAC").

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56.[1] "The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]

Defendants also move for an order striking declarations submitted by plaintiff in opposition to the motion for summary judgment. (Notice of Defs.' Mot. to Strike, Either in Whole or in Part, Submitted by Pl. in Opp'n to Defs.' Mot. for Summ. J., Feb. 1, 2010.) Motions to strike are not required by Fed. R. Civ. P. 56, nor by this Court's Local Civil Rule 56.1, and are superfluous in summary judgment practice. The motion to strike submitted by defendants will be denied as moot, but the arguments in it have been considered.

**2.**

Adelphia Recovery Trust ("ART") is the successor to the ACC unsecured creditors' committee. Defendant Prestige

---

[1] The motion was pending prior to the filing of the SAC. The Court gave the parties the opportunity (which they took) to submit supplemental briefing on the motion to take into account changes in the SAC.

[2] The Court assumes familiarity with the parties and facts discussed in earlier decisions in this multidistrict litigation.

Communications Corp. of NC, Inc. ("Prestige") is a corporation with its principle place of business in Georgia. (SAC ¶ 11.) The other defendants are stockholders and officers of Prestige. (Id. ¶¶ 11-15 & 17.)

The SAC asserts three claims, each against all defendants: (1) for avoidance and recovery of a constructively fraudulent transfer under 11 U.S.C. §§ 544(b) & 550; (2) for avoidance and recovery of an intentionally fraudulent transfer under 11 U.S.C. §§ 544(b) & 550; and (3) for aiding and abetting breaches of fiduciary duty to ACC by members of the Rigas family. (Id. ¶¶ 28-46.)

The action seeks (in the first two claims) to recover an alleged fraudulent conveyance arising out of the purchase by ACC in July of 2000 of the cable assets of Prestige ("Prestige Cable System"), for $795 million in cash. (SAC ¶ 1.) The $795 million in cash is alleged to have been "far more than those assets were worth" (id.), and ACC is alleged to have been substantially insolvent at the time. (Id.) Also in July of 2000, Highland Prestige Georgia, Inc. ("Highland"), a company wholly owned by the Rigas family, acquired the stock of Prestige Communications, Inc. ("Prestige Georgia"), for $300 million. (Id. ¶¶ 10, 16, 21.) The $300 million is alleged to have been "substantially less than the

fair market value of the Prestige Georgia stock." (Id. ¶ 22.) Plaintiffs claim that:

> The Defendants, certain of whom were long-time friends of the Rigas Family, knowingly agreed to a deal structure that permitted the Rigas Family to cause Adelphia to pay substantially in excess of fair market value for the assets that it would ultimately receive, so that the Rigas Family could assign to itself the Prestige Georgia stock that was priced at substantially less than its fair market value. Upon information and belief, the Defendants agreed to this deal structure because it purportedly provided certain of the Defendants with certain tax benefits.

(SAC ¶ 23.)

In the third claim the action alleges that members of the Rigas family breached their fiduciary duties as officers and directors of ACC by causing ACC to overpay for the assets purchased from Prestige (id. ¶ 42), and that defendants aided and abetted that breach of fiduciary duty, and seeks to recover for ACC's estate the difference between what ACC paid for the assets and the value of what it received, as well as damages for the aiding and abetting of the Rigases' breach of fiduciary duty. (Id. at 15.)

### 3.

The $795 million paid for the Prestige assets was paid to Prestige by Adelphia Cablevision, LLC. (Pl. Adelphia Recovery Trust's Resp. and Counterstatement to Defs.' Rule 56.1 Statement, Dec. 22, 2009, ¶ 99, p. 62.) The Response thereto, at the same

4

page, does not dispute that the payment was made by Adelphia Cablevision, LLC, arguing that the latter was "a conduit for transactions involving the consolidated Adelphia enterprise." Id.

The payment having been made by Adelphia Cablevision, LLC, a subsidiary of ACC, the "conduit" argument is not persuasive, and the first and second claims are dismissed, for the reasons set forth in the Court's recent decision, Adelphia Recovery Trust v. Bank of Am., N.A., No. 05 Civ. 9050, 2011 WL 1419617, at *2 (S.D.N.Y. Apr. 7, 2011).

**4.**

The third claim does not identify the state the law of which governs the claim. Plaintiffs contend in their briefing that Georgia law applies (Pl. Mem., Oct. 27, 2009 at 5-6), but brief Pennsylvania law as well. (Id. at 6.) Defendants contend that Pennsylvania law applies. (Def. Mem., Dec. 22, 2009, at 4-6.)

"In a multidistrict case 'a federal court ruling upon questions of state law [is required] to apply the same state substantive law, including choice-of-law rules, that would have been applied by a state court in the jurisdiction in which a case was filed.'" In re Adelphia Commc'ns Corp. Sec. and Derivative Litig., No. 03 MDL 1529, 2009 WL 4928806, at *2 (S.D.N.Y. Dec. 21, 2009) (quoting Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993)). Inasmuch as the present case was filed in this district, "we employ

the choice of law rules of the forum state, in this case New York. New York applies an 'interest analysis' to its choice of law, under which the law of the jurisdiction having the greatest interest in the litigation controls." Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 967 (2d Cir. 1997).

ART may now function largely in New York, but it stands in the shoes of ACC, which did business principally in Pennsylvania where its headquarters was located. ACC is the alleged victim of the harm asserted in the SAC. In these circumstances, the Court concludes that Pennsylvania law should be applied.[3]

This Court has previously found that, were the occasion to arise, the Pennsylvania Supreme Court would recognize the tort of aiding and abetting a breach of fiduciary duty. Adelphia Recovery Trust v. Bank of Am., N.A., 390 B.R. 64, 76-78 (S.D.N.Y. 2008).

> To adequately plead a claim of aiding and abetting a breach of fiduciary duty under

---

[3] Plaintiff, in support of the application of Georgia law, argues in part from the fact that the agreements underlying the relevant transactions between ACC and Prestige contain choice of law provisions designating Georgia law. Construction or interpretation of the contracts, however, is not involved in this case. The issue is what state's law is to be applied to the tort alleged in the third claim. See Chase Manhattan Bank v. New Hampshire Ins. Co., 749 N.Y.S.2d 632, 636 n.6 (N.Y. Co. 2002) (Gammerman, J.)
   The Court notes that Georgia does not appear to recognize a cause of action for aiding and abetting breach of fiduciary duty. Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1156 (11th Cir. 2006).

>       Pennsylvania state law a plaintiff must plead
>       the following elements: "(1) a breach of
>       fiduciary duty owed to another; (2) knowledge
>       of the breach by the aider and abettor; and,
>       (3) substantial assistance or encouragement by
>       the aider and abettor in effecting that
>       breach."

Adelphia Recovery Trust v. Bank of Am., N.A., 624 F.Supp.2d 292, 319 (S.D.N.Y. 2009) (quoting Baker v. Family Credit Counseling Corp., 440 F.Supp.2d 392, 417-18 (E.D.Pa. 2006)) (other citation omitted). A significant factor in the conclusion that the Pennsylvania Supreme Court would recognize the tort of aiding and abetting a breach of fiduciary duty was that court's reliance on the Restatement (Second) of Torts § 876. Id. at 310-12.

The Restatement requires that an aider and abettor know an aided and abetted party's "conduct constitutes a breach of fiduciary duty and gives substantial assistance or encouragement to the other so to conduct himself." Restatement (Second) of Torts § 879(b).

ART, while acknowledging that "no Pennsylvania court appears to have directly addressed the issue," goes on to submit that "constructive knowledge ('should have known') is the proper knowledge standard under Pennsylvania's aiding and abetting law." (Pl. Mem., Dec. 22, 2009, at 41 (footnote omitted).)[4]

---

[4] The two Third Circuit cases cited by ART in its Memorandum at 41, nn. 164 & 165, respectively, -- Rochez Bros., Inc. v. Rhoades, 491 F.2d 402, 413 & n.20 (3d Cir. 1973), and Monsen v. Consolidated Dressed Beef

## 5.

In any event, even if a "should have known" standard is applied, the Court concludes that ART has not come forward with evidence sufficient to survive the motion for summary judgment.

The arguments advanced by ART must be seen in their actual context.

"In the fall of 1999, Adelphia entered into negotiations with the Defendants and their representatives in hopes of acquiring the Prestige Cable Systems and Prestige Georgia's cable systems." (SAC ¶ 19.) On December 6, 1999, Adelphia entered into agreements to acquire those assets for a total price of $1.1 billion. (Id. ¶ 20.) The transaction(s) were consummated on July 5, 2000. (Id. ¶ 25.) "There was a long-term relationship between certain of the Defendants and the Rigas Family." (ART Resp. and Counter-Statement to Defs.' Rule 56.1 Statement, Dec. 22, 2009, Response to ¶ 17, at 11.) Defendant Buckfelder had a close relationship with Tim Rigas, from 1985. (Id.) These facts all predate the "'storm warnings' issued between March and June 2002." Adelphia Commc'ns Corp. Sec. and Derivative Litig., No. 03 MDL 1529, 2005 WL 1278544, at *11 (S.D.N.Y. May 31, 2005). At the time of the challenged

---

Co., 579 F.2d 793, 800 (3d Cir. 1976) -- consider aiding and abetting breach of fiduciary duty in the context of violations of federal securities statutes, not of Pennsylvania law. Rochez, 491 F.2d at 405, 413 n.20. Monsen, 579 F.2d at 795-96. Monsen cites the 1937 version of the Restatement of Torts. Id. at 800 & n.11.

transaction(s), there was no reason for Prestige to suspect that the Rigases had any illegal motives in entering into those transaction(s).  Nor, generally aware of the complexity of the Rigas/Adelphia enterprise, is there any reason why they should have inquired into the reasons for the allocation between the two (or more) elements of the transactions.  Putting aside speculation and hindsight, ART has not shown that defendants should have known -- no less known -- what the Rigases were up to and would do.

Nor has ART shown the requisite "substantial assistance or encouragement" to sustain an aiding and abetting claim. Adelphia Recovery Trust, 624 F.Supp.2d at 319 (emphasis added). Prestige accepted an offer to sell for $1.1. billion, accepting as well the allocation proposed by Adelphia.  That is not substantial assistance.

\*   \*   \*

For the reasons set forth above, defendants' motion for an order striking declarations is denied as moot, and defendants' motion for summary judgment is granted.  Defendants may have judgment dismissing the complaint.

SO ORDERED.

Dated:  June 24, 2011

_____
Lawrence M. McKenna
U.S.D.J.

9